# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| DAVID GOLDEN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-1660 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 22, 23, 26, 34 |
| | : | | |
| MANAGEMENT & TRAINING | : | | |
| CORPORATION, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING [22] DEFENDANT MANAGEMENT & TRAINING CORPORATION'S MOTION TO DISMISS; GRANTING [23] DEFENDANT CHUGACH GOVERNMENT SOLUTIONS LLC'S MOTION TO DISMISS; DENYING AS MOOT [26] PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT; DENYING AS MOOT [34] DEFENDANT CHUGACH GOVERNMENT SOLUTIONS LLC'S MOTION FOR LEAVE TO FILE A SURREPLY

## I. INTRODUCTION

Plaintiff David Golden brings this civil action against Management & Training Corporation and Chugach Government Solutions LLC, alleging that they retaliated against him in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* Specifically, Plaintiff claims that Defendants placed him on a performance improvement plan and ultimately fired him in 2015 for an internal grievance that he submitted in 2013, alleging "age discrimination" and a "hostile work environment." *See* First Am. Compl. ¶¶ 1, 7–18, ECF No. 20. This matter now comes before the Court on Defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see generally* MTC's Mot. Dismiss ("MTC's Mot."), ECF No. 22; CGS's Mot. Dismiss Am. Compl. ("CGS's Mot."), ECF No. 23, as well as Plaintiff's Motion for Leave to File a Second Amended Complaint ("Plaintiff's Mot. for Leave"), ECF No. 26, and Chugach Government Solutions LLC's Motion for Leave to File a

Surreply, ECF No. 34.  For the following reasons, the Court concludes that it must grant

Defendants' motions to dismiss and will deny as moot Plaintiff's motion to amend and Chugach

Government Solutions LLC's Motion for Leave to File a Surreply.

## II.  FACTUAL BACKGROUND

In May 2009, David Golden was hired as a career and technical training manager at the

Potomac Job Corps facility, located in the District of Columbia.  First Am. Compl. ¶¶ 5, 7, ECF

No. 20.  The Potomac Job Corps facility is one of several locations around the country at which

the U.S. Department of Labor administers a program called Job Corps.  *See* First Am. Compl.

¶¶ 5–6.  Job Corps is a free academic and career technical training program for young, former

offenders designed to provide those individuals with skills and education that will allow them to

obtain meaningful employment and become productive members of their communities.  First

Am. Compl. ¶¶ 5, 8.  Chugach Government Services, Inc. ("CGSI") is an Alaska corporation that

allegedly contracted with the Department of Labor to operate this program on its behalf

throughout the United States.[1]  Proposed Second. Am. Compl. ¶ 6, ECF No. 26-2.  Management

& Training Corporation ("MTC") is a subcontractor under CGSI, that "assists in the management

of the Potomac Job Corps facility."  Proposed Second Am. Compl. ¶ 5.  Golden alleges that he

was hired by MTC when he was 57 years old and that his responsibilities at the facility included

---

[1] Although Golden's First Amended Complaint indicates that Chugach Government
Solutions ("CGS") was responsible for operating the program, *see* First Am. Compl. ¶ 6, Golden
has conceded in subsequent filings that, in fact, this work was performed by CGS's affiliate,
CGSI.  *See* Pl.'s Mem. P & A Supp. Mot. Leave File Second Am. Compl. at 3 ("Pl.'s Mem.
Supp. Mot. Leave"), ECF No. 26-1 (requesting leave to replace CGS with CGSI, "the proper
entity to be sued," without altering the facts of the complaint).  For the purpose of clarity in
setting forth the relevant facts, the Court accepts Golden's assertion that CGSI is the true identity
of the party referenced in his First Amended Complaint.

teaching former criminal offenders about educational training, plumbing, and culinary arts.  *See* First Am. Compl. ¶ 7.

On October 16, 2013, Golden filed a grievance with MTC's Equal Employment Opportunity ("EEO") Coordinator in which he alleged "age discrimination" and a "hostile working environment."  First. Am. Compl. ¶ 12.  Golden's grievance allegedly encompassed two perceived harms.  *See* First. Am. Compl. ¶ 12.  First, Golden claimed that, beginning in 2011, he had informed his supervisors of concerns he had relating to Defendants' allegedly poor administration of the Job Corps program and the lack of certain resources and administrative support that they provided to him and his staff.[2]  First Am. Compl. ¶¶ 9–10, 12.  According to Golden, however, these concerns went unaddressed.  *See* First Am. Compl. ¶ 12.  Second, he claimed that his MTC supervisor erroneously placed him on a performance improvement plan ("PIP") in 2012 for allegedly failing to obtain certifications for students, even though Golden had maintained a satisfactory rating on his performance evaluation for that year.  First. Am. Compl. ¶¶ 11–12.  According to Golden, his administrative concerns went unaddressed and he was erroneously placed on the PIP because of "age discrimination," though his complaint provides no details explaining how he arrived at that conclusion.  *See* First Am. Compl. ¶ 12.  He further

---

[2] For example, Plaintiff complained that: "(1) students were going six to eight months without a qualified instructor; (2) overcrowded classrooms; (3) lack of budget allocation for specific projects; (4) Defendants' refusal to provide proper training opportunities to Plaintiff and his staff, yet providing the same opportunity to other staff members; (5) Defendants' refusal to hire qualified staff; (6) Defendants' failure to process purchase orders requested by Plaintiff's staff (7) failure to monitor construction work performed at Potomac Job Corps by outside contractors; (8) lack of inventory control equipment at the Corps' facility; (9) Defendants' refusal to order equipment for students and staff members; (10) Defendants' failure to provide a budget; . . . (11) failure to provide air-conditioning in classrooms during summer months; (12) failure to provide heat in classrooms during the winter months; (13) failure to provide working computers for students in classrooms." First. Am. Compl. ¶ 10.

alleged that these harms were representative of a "hostile work environment," but again, he provides no other details supporting that belief.  *See* First Am. Compl. ¶ 12.

At some point in 2015, more than a year after Golden's internal complaint, a different MTC supervisor placed Golden on yet another PIP.  First Am. Compl. ¶ 13.  Again, this was done despite Plaintiff maintaining a satisfactory performance rating for that year.  First Am. Compl. ¶ 13.  Then, in July 2015, MTC terminated Golden from his employment because he allegedly failed to complete the second PIP's requirements.  First Am. Compl. ¶ 14.

On February 18, 2016, Golden filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been "discriminated against and been the victim of retaliation for engaging in protected activity" in violation of the ADEA.  *See* EEOC Charge of Discrimination, ECF No. 25-3.  Three months later, on May 18, 2016, the EEOC issued a right-to-sue letter.  EEOC Dismissal and Notice of Rights, ECF No. 1-2.

On August 16, 2016, Golden brought suit against MTC and Chugach Government Solutions ("CGS")—not CGSI—alleging that Defendants retaliated against him by "erroneously placing Plaintiff on a PIP and terminating him despite his satisfactory ratings on his yearly performance appraisals" as a result of Golden's "internal complaint for age discrimination and hostile work environment."  Compl. ¶ 17, ECF No. 1.  Golden's Complaint, however, sought relief under Title VII of the Civil Rights Act of 1964, not the ADEA.  Compl. ¶ 1.  After Defendants filed motions to dismiss highlighting this fact, Golden amended his Complaint to replace the Title VII claim with a retaliation claim under the ADEA on November 3, 2016.  *See generally* First Am. Compl.  Golden did not alter any of the underlying allegations.  *Compare* Compl., *with* First. Am. Compl.

On November 21, 2016, MTC and CGS each filed new motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See generally* MTC's Mot.; CGS's Mot. One of the arguments advanced by CGS in its motion was that it could not be liable to Golden because it, in fact, did not operate the Potomac Job Corps facility and thus could not have been his employer.  *See* CGS's Mot. at 3–4.  CGS pointed out, as it had in its prior motion, that the facility was, in reality, operated by CGSI.  *See* CGS's Mot. at 3–4.  In response, Golden filed a motion for leave to file a second amended complaint, which sought to replace CGS with CGSI without altering any of the underlying factual allegations,  *see generally* Pl.'s Mot. for Leave, and Defendants opposed the motion, *see generally* CGS's Opp'n to Pl.'s Second Mot. Leave Am. Compl., ECF No. 30; MTC's Opp'n Pl.'s Mot Leave File Second Am. Compl., ECF No. 32. The Court now addresses each of the pending motions.[3]

## III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor.  *See,*

---

[3] CGS has also sought leave to file a surreply in opposition to Golden's motion for leave to amend.  *See generally* Def. Chugach Government Solutions LLC's Mot. Leave File Surreply, ECF No. 34.  Because the Court need not reach the issues addressed in CGS's brief to resolve the motions currently before the Court, the Court denies this motion as moot.

*e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.

## IV.  ANALYSIS

Because Golden's First Amended Complaint and his proposed Second Amended Complaint share the same underlying factual allegations and assert the same claim for relief under the ADEA, the Court first considers whether Plaintiff's ADEA claim is time-barred and whether he has adequately pled a claim for retaliation.  For the reasons set forth below, the Court concludes that Golden's ADEA claim is not time-barred because his ADEA claim, which alleges the same facts as his original Title VII claim, relates back to the date of his first pleading. However, the Court also finds that Golden has failed to allege a plausible claim for retaliation under the ADEA because he has failed to allege facts demonstrating that he engaged in an activity protected by the statute.  This is so because, although he allegedly submitted an internal grievance in 2013 for "age discrimination" and "hostile work environment," he has not alleged any facts that might support an inference that he held a reasonable, good faith belief that the

perceived harms he reported were violations of the ADEA.  Accordingly, the Court finds that Golden has failed to plausibly state a claim for relief under the ADEA and will grant Defendants' motions to dismiss.  However, because the Court believes that the deficiencies may be cured through subsequent pleading, the Court will dismiss the complaint without prejudice and grant Golden leave to amend the complaint.  Furthermore, because the deficiencies present in the First Amended Complaint are also present in Golden's proposed amendment and because the Court is granting Plaintiff leave to amend those deficiencies, the Court will also permit Golden to replace CGS with CGSI as a defendant in any forthcoming pleading, but it will deny Golden's motion as moot.

### A.  Statute of Limitations

CGS argues that Golden's ADEA claim must be dismissed because Golden's First Amended Complaint, which first raised a claim under the ADEA, is untimely.  *See* CGS's Mot. at 8–9.  Golden contends, however, that his claim is not time-barred because it relates back to the date of his original complaint.  Pl.'s Opp'n to CGS's Mot. at 10.  Specifically, Golden argues that his First Amended Complaint relates back because he simply replaced his former Title VII claim with an ADEA claim without changing any of the underlying facts.  Golden has the better of the arguments.

The law permits a plaintiff to file an ADEA action within ninety days of receiving a right-to-sue letter from the EEOC.  *See* 29 U.S.C. § 626(e).  Golden's right-to-sue letter was mailed on May 18, 2016, Compl. at Ex. A, ECF No. 1-2, and was presumably received by at least May 23, 2016, *see Taye v. Amundson*, 908 F. Supp. 21, 203 (D.D.C. 1995) (when not otherwise alleged, EEOC letters are presumptively received three to five days later).  Accordingly, Golden was required to file his ADEA claim on or before August 21, 2016.

Although Golden filed his original complaint alleging a Title VII claim on August 16, 2016, *see* Compl., he did not assert a claim under the ADEA until November 3, 2016, *see generally* First Am. Compl.  Consequently, Golden's ADEA claim can only survive if it relates back to the date of his original Complaint.

Rule 15(c) of the Federal Rules of Civil Procedure permits an amendment to relate back to the date of an original pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  An amended complaint, however, does not relate back when it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Mayle v. Felix*, 545 U.S. 644, 650 (2005).  Thus, an amended complaint cannot "fault [a defendant] for conduct different from that identified in the original complaint."  *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008).  The D.C. Circuit has explained that "[t]he underlying question is whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint."  *Id*.

Here, it is clear that Golden's First Amended Complaint asserts a claim that arose out of the "conduct, transaction, or occurrence" that he pled in his original Complaint.  As Golden correctly argues, his First Amended Complaint merely replaced his earlier Title VII claim with a claim under the ADEA.  Contrary to CGS's arguments, the First Amended Complaint does not assert any new facts that differ in "time and type" from those in Golden's original complaint or fault Defendants for "conduct different from that identified in the original complaint" because, in

fact, it does not allege any new facts whatsoever.[4]  Rather, it simply changes the formal legal

basis for the relief that Golden seeks.  Under such circumstances, relation back under Rule 15 is

proper.  *See Dave v. District of Columbia*, 811 F. Supp. 2d 111, 117 (D.D.C. 2011) (holding that

the "§ 1981 claim relates back to the original complaint, and is not barred by the statute of

limitations" because "[t]he amended complaint contains no new factual allegations upon which

the plaintiff seeks to base his proposed § 1981 claims"); 6A C. Wright, A. Miller, & M. Kane,

*Federal Practice and Procedure* § 1497, 113–14 (3d Ed. 2010) ("The fact that an amendment

changes the legal theory on which the action initially was brought is of no consequence if the

factual situation upon which the action depends remains the same and has been brought to the

defendant's attention by the original pleading.").  Thus, the Court finds that Golden's First

Amended Complaint relates back to the date of his original pleading, meaning that his ADEA

claim is not time-barred.

## B.  ADEA Retaliation Claim

Although Golden's claim is not time-barred, he has not adequately pled a retaliation

claim under the ADEA.  The ADEA makes it unlawful for an employer to retaliate against an

employee for "oppos[ing] any practice made unlawful" by the statute.  *See* 29 U.S.C. § 623(d).

Unlike the substantive anti-discrimination provision, which "seeks to prevent injury to

individuals based on who they are, *i.e.*, their status[,][t]he antiretaliation provision seeks to

prevent harm to individuals based on what they do, *i.e.*, their conduct."  *Burlington N. & Santa*

---

[4] Moreover, any suggestion that CGS is now surprised by Plaintiff's claim under ADEA
would be highly disingenuous.  Indeed, CGS argued that Plaintiff's original complaint should be
dismissed because his "EEOC Charge . . . claims retaliation on the basis of age under the *ADEA*,
but now he brings a claim for *Title VII* retaliation."  CGS's Mem. Supp. Mot. Dismiss Compl. at
8, ECF No. 14 (emphasis in original).

*Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).  To state a claim for retaliation under the ADEA, a

plaintiff must allege that "(1) he engaged in statutorily protected activity; (2) that he suffered a

materially adverse action by his employer; and (3) a causal link connects the two."  *Jones v.*

*Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009); *see also Tomasello v. Rubin*, 167 F.3d 612, 619

(D.C. Cir. 1999) ("[T]he test for determining retaliation under the ADEA and Title VII is

identical.") (citation omitted)).  Defendants do not dispute that Golden has adequately alleged a

materially adverse action, having been placed on a PIP that ultimately led to his termination.

Defendants argue, however, that Golden's retaliation claim must fail because he has not

adequately alleged either that he engaged in a statutorily protected activity or that there was a

causal connection between that activity and any actions taken by Defendants.  The Court agrees

that Plaintiff has not alleged a statutorily protected activity.[5]

Under the ADEA, submitting a formal or informal complaint of unlawful discrimination

based on age to one's employer constitutes statutorily protected activity.  *See* 29 U.S.C. § 623(d);

*see also Peters v. Dist. of Columbia*, 873 F. Supp. 2d 158, 202 (D.D.C. 2012) ("informal

complaints to management may constitute protected activity").  To qualify for protection, the

grievance need not invoke any "'magic words,'" but it "must in some way allege unlawful

discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232

(D.C. Cir. 2006).  And though "an employee's retaliation claim does not rise or fall on the

success of [his] underlying, good-faith discrimination claim," *Nurriddin v. Bolden*, 818 F.3d

751, 757, n.5 (D.C. Cir. 2016), the employee must have "reasonably and in good faith believed

---

[5] Because the Court finds that Plaintiff has failed to allege a statutorily protected activity,
it need not address defendants' arguments concerning causation.  But, to the extent Plaintiff will
file yet another amended Complaint, he would be wise to heed the Defendants' arguments
concerning causation.

[the challenged practice] was unlawful under the statute," *McGrath v. Clinton*, 666 F.3d 1377,

1380 (D.C. Cir. 2012).  If "the practice the employee opposed is not one that could reasonably

and in good faith be regarded as unlawful under [the ADEA], this element is not satisfied."  *Id.*

(citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)).

Golden alleges that he filed an internal grievance with MTC's EEO coordinator in

October 2013, claiming that MTC's "failure to address his [various administrative] concerns . . .

as well as his erroneous placement on a PIP in 2012" were the result of "age discrimination" and

were characteristic of a "hostile work environment"  First. Am. Compl. ¶ 12.  MTC essentially

argues, however, that Golden has failed to allege any facts from which to infer that Golden had a

reasonable, good-faith belief that he was opposing an unlawful employment practice under the

ADEA.  *See* MTC's Mot. at 4–6.  MTC argues that Golden's 2013 EEO complaint was simply a

"renewal" of his earlier administrative concerns and a generalized complaint that he was placed

on the 2012 PIP.  Golden's mere application of the label "age discrimination" and "hostile work

environment," MTC argues, cannot "convert complaints about routine workplace issues into

protected activity" when he has not alleged any facts that support an inference that any of the

supposed harms had anything to do with Golden's age.  *See* MTC's Mot. at 4–6.

The Court agrees that, even read liberally, Golden's complaint does not sufficiently

allege that he engaged in protected activity.  To start, Defendants' supposed failure to address

Golden's litany of administrative concerns, standing alone, does not give rise to a reasonable

inference that Defendants engaged in age discrimination.  Indeed, Golden has not offered any

allegation that connects Defendants' failures to act with Golden's age or otherwise demonstrated

that they were motivated by any discriminatory animus.  Further, Golden's bald assertion that

Defendants did not address his concerns because of his age "neither makes the accusation true

nor makes it reasonable for him to have believed it was true."[6]  *McGrath v. Clinton*, 666 F.3d at

1381; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.").  If Golden's internal charge about

his various administrative concerns is to serve as the predicate for his retaliation claim, Golden

must allege some set of facts from which to infer that he *reasonably* believed Defendants' failure

to act was a manifestation of age discrimination.  *See George v. Leavitt*, 407 F.3d 405, 417 (D.C.

Cir. 2005) (dismissing Title VII retaliation claim because "the incidents of which [plaintiff]

complained [to his employer] could not reasonably be thought to constitute an abusive working

environment in violation of Title VII."); *Drumm v. SUNY Geneseo Coll.*, 486 F. App'x 912, 914

(2d Cir. 2012) (dismissing Title VII retaliation claim because "plaintiff's allegation that she 'had

a good faith basis to believe that she was being treated differently on the basis of her sex' is

conclusory and therefore insufficient to satisfy her pleading burden" and "plaintiff's allegations

that can properly be considered factual do not suggest that she had a reasonable belief that she

---

[6] In *Sparrow v. United Air Lines, Inc.*, the D.C. Circuit instructed that "all a complainant ha[d] to say to survive a motion to dismiss under Rule 12(b)(6)" was something to the effect of "I was turned down for a job because of my [protected status]."  216 F.3d 1111, 1115 (D.C. Cir. 2000) (internal quotations omitted).  It premised this conclusion, at least in part, on *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), where the Supreme Court held that a complaint should only be dismissed for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief."  However, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) the Supreme Court "retired the Conley no-set-of-facts test," *id.* at 670.  As a result, although the issue is not entirely settled, the Court agrees with other courts in this District that the *Sparrow* pleading standard is no longer controlling.  *See, e.g., Jackson v. Acedo*, 08–cv–1941, 2009 WL 2619446, at *4 (D.D.C. Aug. 26, 2009) (concluding that "*Sparrow* is no longer binding authority in light of" the Supreme Court's observations "in *Twombly*"); *Ali v. D.C. Gov't*, 697 F. Supp. 2d 88, 92 (D.D.C. 2010) (describing the "questions that [have] arise[n] about the continued validity of *Sparrow* in light of *Twombly* and *Iqbal*"); *Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 310 (D.D.C. 2015) (noting that "*Twombly* and *Iqbal* require more factual context" than the "multiple assumptions" necessary to state a claim under the *Sparrow* standard).

was a victim of gender discrimination."); *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220,

227 (1st Cir. 2012) (holding that "amended complaint fails to set forth a plausible claim of

retaliation" under Title VII because comments cited in complaint to employer "were unarguably

gender-neutral and do not afford an objectively reasonable foundation for a retaliation action.").

Because Golden offers no set of facts from which to infer that he *reasonably* believed

Defendants' failure to act was a manifestation of age discrimination, the Court cannot find that

such a charge satisfies his burden to allege protected activity.

Likewise, Golden's placement on the 2012 PIP does not support a reasonable inference of

unlawful age discrimination.  The D.C. Circuit has made clear that mere placement on a PIP,

without more, does not constitute an adverse employment action suitable for sustaining a claim

under the ADEA.  *See Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (placement on PIP

was not "an adverse employment action upon which [plaintiff] may base a claim of

discrimination" when she did "not present evidence suggesting she suffered any 'significant

change in [her] employment status.'").  "[R]ather[,] placement on the PIP must have *resulted* in

an adverse action."  *Chowdhury v. Bair*, 604 F. Supp. 2d 90, 96 (D.D.C. 2009) (emphasis in

original).  Golden, however, has not alleged that *anything* happened as a result of his placement

on the 2012 PIP.  And even if he had, he again does not allege any facts demonstrating that MTC

placed him on the PIP because of his age.  Indeed, MTC allegedly placed Golden on the PIP

because he "fail[ed] to obtain certifications for his students at the Corps."  First Am. Compl. ¶

11.  Although Golden claims that he had "satisfactory performance appraisals" in 2012, he does

not dispute MTC's purported justification for the PIP or allege any other facts suggesting that the

PIP was a result of Golden's age.  Thus, there is no reasonable basis to believe that Golden's

placement on the 2012 PIP was the result of age discrimination.

Finally, neither the alleged failure to address Golden's administrative concerns nor Golden's alleged placement on the PIP in 2012 when viewed separately or in the aggregate could reasonably be considered to have created a "hostile work environment" under the ADEA.  The Supreme Court has explained that a hostile work environment exists "[w]hen the workplace is permeated with *discriminatory* intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (emphasis added).  This requires some connection between the alleged abuse and the plaintiff's protected status.  *See e.g., McKeithan v. Boarman*, 803 F. Supp. 2d 63, 70 (D.D.C. 2011) (holding that plaintiff's "claim that he suffered a hostile work environment based on age discrimination must also be dismissed" because he "offers nothing to support a claim that any of [supervisor]'s conduct was linked to his age, and he fails to offer any evidence or argument that would suggest that he was exposed to discriminatory intimidation, ridicule, or insult because of his age."); *Peters.*, 873 F. Supp. 2d at 190–95 (D.D.C. 2012) (dismissing Title VII hostile work environment claims where Complaint failed to demonstrate that employees were subjected to abuse "because of [their] protected status"); *Hunter v. District of Columbia*, 797 F. Supp. 2d 86, 94 (D.D.C. 2011) (dismissing claim for Title VII hostile work environment where "[t]he Court [was] left to infer that each act was discriminatory or retaliatory simply based on the fact that he is a man, or that he is African–American, or both."); *Jones v. Billington*, 12 F. Supp. 2d 1, 12 (D.D.C. 1997) (Title VII hostile work environment claim failed where plaintiff had "not demonstrated that any of the conduct of which he complains was related to his race, or that his workplace was permeated with racially discriminatory behavior").  But in this case, as discussed above, the Complaint does not provide any link between the Defendants' actions and Golden's

14

age.  Thus, Golden has failed to plead any facts from which to infer that he had a reasonable

basis to believe that Defendants had created a hostile work environment violative of the ADEA.[7]

      As a result of these deficiencies, Plaintiff's claim under the ADEA must be dismissed.

Although Golden allegedly submitted an internal grievance claiming "age discrimination" and

"hostile work environment," the facts underpinning those claims, as alleged in the complaint,

simply do not allow the Court to conclude that he had a "reasonable, good faith belief" that

defendants violated the ADEA.  Accordingly, Golden has not pled a statutorily protected activity

for which a retaliation claim might lie under the ADEA and dismissal of his claim is appropriate.

*See e.g., George*, 407 F.3d at 417 (dismissing Title VII retaliation claim because "the incidents

of which [plaintiff] complained [to his employer] could not reasonably be thought to constitute

an abusive working environment in violation of Title VII").  However, because the Court is not

convinced that the Complaint could not be cured through the allegation of additional facts, the

Court will dismiss the Complaint without prejudice and grant Golden leave to amend.  *See*

*Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("A dismissal *with prejudice* is

warranted only when a trial court determines that the allegation of other facts consistent with the

challenged pleading could not possibly cure the deficiency.") (emphasis in original) (internal

quotations omitted).

---

[7] Furthermore, the alleged harassing behavior is not sufficiently severe, pervasive, or extreme to rise to the level of an actionable hostile work environment.  *See e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (stating that "conduct must be extreme" to create a hostile work environment); *Walden v. Patient-Centered Outcomes Research Inst.*, 177 F. Supp. 3d 336, 344–45 (D.D.C. 2016) (Plaintiff's placement on PIP and receipt of negative performance evaluation were not "sufficiently severe or pervasive" to constitute a hostile work environment); *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) (Plaintiff's allegation that his supervisors placed him on a PIP, gave him unfavorable performance feedback, told him he could not submit any more assignments, yelled at him during a meeting about his PIP, and placed him on an extended Performance Opportunity Period upon failure to complete his PIP were not "severe or pervasive enough to constitute a hostile work environment").

### C.  Golden's Motion for Leave to Amend his Complaint

Also pending before the Court is Golden's motion for leave to amend his complaint to add CGSI as a party.  In its Motion to Dismiss, CGS argued that the Potomac Job Corps facility is operated by CGSI, not CGS, and that Golden could not plausibly allege that CGS was his employer.  *See* CGS's Mot. at 3–6.  Rather than contest CGS's argument, Golden sought leave of court to file a Second Amended Complaint.  *See generally* Pl.'s Mot. for Leave.  Golden's proposed amendment did not alter any of the facts from his prior complaints other than replace CGS with CGSI, which Golden admits is the "proper entity to be sued." Pl.'s Mem. Supp. Mot. Leave at 3.

The Court has already found that the First Amended Complaint failed to state a claim.  These same deficiencies are also present in Golden's proposed amendment.  Thus, granting Golden's motion and deeming his proposed amendment as filed would be futile because it could not withstand a motion to dismiss.  *See James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 264 (D.D.C. 2012).  However, the Court has also already granted Golden leave to cure deficiencies in his First Amended Complaint.[8]  Because the Court is granting Golden leave

---

[8] Even if Golden substitutes CGSI for CGS and alleges new facts curing the ADEA issues, that alone will not cure the problems with his claims against CGSI without additional facts demonstrating that CGSI was his employer.  The D.C. Circuit has recognized that "an individual may be jointly employed by two or more entities" and that, in making that determination, the critical inquiry for the Court is the degree of control that the purported employer has over the employment relationship.  *Al–Saffy v. Vilsack*, 827 F.3d 85, 96 (D.C. Cir. 2016) (citing *Redd v. Summers*, 232 F.3d 933, 938–39 (D.C. Cir. 2000)).  But Golden alleges that all of the purportedly unlawful employment actions in this case were carried out by MTC—not CGSI—and his Complaint is silent on the issue of CGSI's control over Golden or other MTC employees.  *See* First Am. Compl. ¶¶ 7, 11–14.  Although Golden alleges that CGSI maintained a "human resources director at the [Potomac Job Corps facility] . . . [that] oversaw the duties and responsibilities of MTC's hired staff including [Golden]," First Am. Compl. ¶ 6, it is not tantamount to an allegation that CGSI could "control and direct" both the details and results of

to cure these deficiencies, it will also permit Golden to replace CGS with CGSI as a defendant.[9]

[10]

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss,

**DENIES AS MOOT** Plaintiff's Motion for Leave to Amend to File Second Amended

Complaint, and **DENIES AS MOOT** CGS's Motion To File Leave To File A Surreply.  An

order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  July 21, 2017                                    RUDOLPH CONTRERAS
                                                         United States District Judge

---

Golden's work or that it controlled the "terms and conditions" of his employment, *see Redd*, 232 F.3d at 938.  Thus, Golden's allegation of oversight, standing alone, is not enough to establish that CGSI was Golden's employer.  *See Mack v. Aspen of DC, Inc.*,  15-cv-1973, 2017 WL 1214395 at *3 (D.D.C. Mar. 31, 2017) (dismissing claims because allegation that plaintiff "reported to and [was] directly supervised by" defendant was not sufficient to establish that defendant was plaintiff's "'employer' for purposes of Title VII liability"); *Miles v. Howard Univ.*, 83 F. Supp. 3d 105, 115 (D.D.C. 2015) (Defendant's quality control oversight was "insufficient to establish that it was a joint employer of the plaintiff").  Although the joint employment inquiry is fact intensive and a plaintiff need not allege every facet of a relationship in order to sufficiently allege that a defendant is a joint employer, more is needed here.

[9] Although the Court does not decide the issue, the Court notes that CGS's argument that an amended complaint adding CGSI would be time-barred and not relate back to his original pleading because Golden must have known "the identity of CGSI" at that time, CGS's Opp'n to Pl.'s Second Mot. Leave Am. Compl. at 5–6, seems doubtful in light of the Supreme Court's decision in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010).

[10] Because the Court resolves Golden's motion for leave to amend his complaint on other grounds, the Court need not address CGS's argument—which it raised in its opposition brief and in its proposed surreply, but not in its motion to dismiss—that Golden failed to exhaust his administrative remedies.  Indeed, in this Circuit, a failure to exhaust administrative remedies under the ADEA is considered "an affirmative defense, not a jurisdictional requirement," for which the defendant bears the burden of proof and which is more properly considered on a motion for summary judgment.  *See Koch v. Walter*, 935 F. Supp. 2d 164, 170 (D.D.C. 2013); *Ahuja v. Detica Inc.*, 742 F. Supp. 2d 96, 102–03 (D.D.C. 2010) (converting motion to dismiss into motion for summary judgment in order to resolve defendant's arguments that plaintiff failed to exhaust administrative remedies).  Thus, the Court denies CGS's motion for leave to file a surreply as moot.