# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID GOLDEN,                                :
                                             :
     Plaintiff,          :     Civil Action No.:     16-1660 (RC)
                                             :
     v.                  :     Re Document Nos.:     45, 46
                                             :
MANAGEMENT & TRAINING                        :
CORPORATION, *et al.*,                       :
                                             :
     Defendants.         :

## MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

## I. INTRODUCTION

Plaintiff David Golden brings this suit against Management & Training Corporation

("MTC") and Chugach Government Services, Inc. ("CGSI") for discrimination and retaliation in

violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et*

*seq.*, as well as for wrongful termination. Specifically, Mr. Golden alleges that after he

complained to his supervisors at MTC and CGSI that he was receiving disparate pay and

treatment based on his age, he was placed on an unnecessary Performance Improvement Plan

("PIP") and then terminated. Now before the Court are MTC's and CGSI's motions to dismiss

Mr. Golden's Second Amended Complaint. MTC has moved to dismiss on the ground that Mr.

Golden's claims are either time-barred or insufficiently pleaded. CGSI has moved to dismiss on

the ground that it never in fact employed Mr. Golden and that therefore it cannot be liable to him

under the ADEA. In the alternative, it argues that Mr. Golden has failed to state a claim and that

his claims are time-barred. For the reasons set forth below, the Court finds that Mr. Golden has

stated claims against MTC for certain acts of age discrimination and retaliation, but not for

wrongful termination. It further finds that Mr. Golden has stated a claim for retaliation against

CGSI, but not for wrongful termination, and that his claim for age discrimination is time-barred.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

Mr. Golden worked as a career and technical training manager at the Potomac Job Corps

facility from his hiring in May 2009 until his termination in July 2015, when he was 63 years

old. 2d Am. Compl. ¶¶ 4, 8, ECF No. 43. The Potomac facility is one of several locations around

the country at which the U.S. Department of Labor administers its Job Corps program, which

offers free academic and vocational training to young, formerly incarcerated individuals. *Id.* ¶¶ 6,

9. Defendant CGSI has contracted with the U.S. Department of Labor to provide operations,

training, management, and maintenance services at the site. *Id.* ¶ 5. CGSI in turn subcontracts

with MTC to provide educational services to Job Corps students. *Id.* ¶ 6. "With the assistance

and understanding of Defendant MTC, CGSI's human resources director at Job Corps' District

of Columbia facility—Grace Jabril—oversaw the duties and responsibilities of MTC's hired staff

including Plaintiff." *Id.* ¶ 5. Correspondence from individuals working at the facility—

"regardless of whether the author was an employee of CGSI or MTC—at all times contained the

'Job Corps' logo." *Id.* ¶ 7.

---

[1] At the motion to dismiss stage, the Court accepts the plaintiff's factual allegations as true. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). MTC has argued that because some of the facts included in Mr. Golden's Second Amended Complaint contradict facts in his First Amended Complaint, the contradictory facts are not entitled to a presumption of truth. *See* Mem. P. & A. Supp. Def. MTC's Mot. Dismiss ("MTC's Mem.") at 13, ECF No. 45-1. For simplicity's sake, the Court will recount the facts in Mr. Golden's Second Amended Complaint in this section, and will address MTC's contention that facts in his complaints are contradictory when it reviews MTC's argument that Mr. Golden has failed to plead a plausible inference of retaliation. *See infra* Section IV.A.2.

MTC hired Mr. Golden in 2009, when he was 57 years old. *Id.* ¶ 8; 1st Am. Compl. ¶ 7, ECF No. 20. In April 2011, Mr. Golden began to "voice his concerns" to MTC and CGSI personnel that he was being discriminated against on the basis of his age. 2d Am. Compl. ¶ 11.

> Specifically, he complained about (1) disparate amount of pay he was receiving as a yearly salary from Job Corps compared to other managers significantly younger than him and less credentialed; (2) younger employees being able to attend training courses that he was not allowed to attend; (3) younger managers getting their supply purchase orders approved while the orders that he made were always being delayed; and (4) younger managers received additional compensation bonuses above their salary for work performed on projects while he was unable to receive the same compensation for similar work performed.

*Id.* Mr. Golden alleges that he hand-delivered EEO complaints containing these allegations on April 4, 2011; December 10, 2013; July 14, 2014; February 20, 2015; and May 20, 2015. *Id.* ¶ 12. The recipients of each EEO complaint included employees of both MTC and CGSI. *Id.*

Despite what Mr. Golden characterizes as "satisfactory performance appraisals from his supervisors throughout his entire tenure at Job Corps," Mr. Golden's MTC supervisors twice placed him on PIPs—once in 2012 and once in 2015. *Id.* ¶¶ 13, 15. Mr. Golden met the requirements of his 2012 PIP and continued to work at Job Corps. *Id.* ¶ 14. However, following Mr. Golden's second placement on a PIP in March 2015, he was fired in July 2015 "for allegedly not successfully completing the requirements of the 2015 PIP despite receiving a satisfactory rating from [his MTC supervisor Mr. Stroman] during the same period." *Id.* ¶¶ 15–16. Mr. Golden highlights that "Dwaine Page (34 years of age) and Patricia Pryor (43 years of age)— younger managers employed by Job Corps who did not satisfactorily perform their job duties during [Mr. Golden's] tenure—were given the opportunity to cure their performance after lesser methods of discipline were imposed upon them." *Id.* ¶ 19.

Two months before his termination, Mr. Golden filed a charge with the EEOC alleging discrimination based on race, age, and disability, as well as retaliation. *See* MTC's Mot. Ex. 1 ("1st EEOC Charge") at 2, ECF No. 45-3.[2] MTC received notice of this charge on or around May 26, 2015. *See id.* at 1. The EEOC declined to pursue Mr. Golden's case and instead granted him a right-to-sue letter on August 5, 2015. *See* MTC's Mot. Ex. 2 ("1st Right-to-Sue Letter") at 1, ECF No. 45-4. By that time, Mr. Golden had been terminated.

Mr. Golden never filed a suit based on his first EEOC charge. Instead, he filed a second EEOC charge against "Potomac Job Corp" on February 18, 2016. His charge included the following allegations:

> On multiple occasions, from the time period of May 2009, until the time of my discharge in June of 2015 I was subject to different and unfavorable treatment than those outside my protected class. Other younger managers, in the same position title as me, received better compensation, and educational training opportunities from my company that were not extended to me. As a result of this treatment I filed multiple internal EEO complaints that were left unaddressed. Shortly after which, I was put on a Performance Improvement Plan, and then terminated.

---

[2] In deciding a motion to dismiss for failure to state a claim, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002); *see also Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 283–84 (D.D.C. 2012) (same). "A court may consider extrinsic documents not expressly referenced in the complaint without converting the motion to a summary judgment motion if the document is a matter of public record [of] which the court may take judicial notice." *Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 93 n.5 (D.D.C. 2012) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions. *See e.g.*, *Kruger v. Cogent Commc'ns, Inc.*, 174 F. Supp. 3d 75, 85 (D.D.C. 2016) ("Further, the Court can take judicial notice of [the plaintiff's] EEOC Charge as it is a public document[].");  *Williams v. Chu*, 641 F. Supp. 2d 31, 34–35 (D.D.C. 2009) (taking judicial notice of an EEOC decision). Therefore, because Mr. Golden has not objected to MTC's inclusion of his EEOC charges or right-to-sue letters, and because Mr. Golden even included his second EEOC charge in his opposition to MTC's motion to dismiss himself, *see* Pl.'s Opp'n MTC's Mot. Ex. 1, ECF No. 48-1, the Court takes judicial notice of Mr. Golden's two EEOC charges and two right-to-sue letters. *See* MTC's Mot. Exs. 1, 2, 3, ECF Nos. 45-3 to 45-5; Compl. Ex. 1, ECF No. 1-2.

MTC's Mot. Ex. 3 ("2d EEOC Charge") at 2, ECF No. 45-5. He further explained that he had "been discriminated against, and been the victim of retaliation for engaging in protected activity in violation of the Age Discrimination in Employment Act of 1967, as amended." *Id.*

After receiving his right-to-sue letter based on the second EEOC charge, *see* Compl. Ex. 1, ECF No. 1-2, Mr. Golden brought suit against MTC and Chugach Government Solutions, LLC ("CGS")—not CGSI—alleging that Defendants retaliated against him in violation of Title VII by "erroneously placing Plaintiff on a PIP and terminating him despite his satisfactory ratings on his yearly performance appraisals" "as a direct and proximate result of filing an internal complaint for age discrimination and hostile work environment." Compl. ¶ 17, ECF No. 1. After MTC and CGS filed their first motions to dismiss, *see* MTC's 1st Mot. Dismiss, ECF No. 10; CGS's 1st Mot. Dismiss, ECF No. 14, Mr. Golden moved for leave to amend his complaint to replace his claim under Title VII with a claim under the ADEA, which the Court allowed. *See* 1st Am. Compl.; Minute Order (Nov. 3, 2016). MTC and CGS again moved to dismiss Mr. Golden's complaint for failure to state a claim. *See* MTC's 2d Mot. Dismiss, ECF No. 22; CGS's 2d Mot. Dismiss, ECF No. 23. One of the grounds upon which CGS moved to dismiss the First Amended Complaint was that CGSI, not CGS, operated the Potomac Job Corps facility. *See* Mem. P. & A. CGS's 2d Mot. Dismiss at 3–4, ECF No. 23.

In July 2017, the Court granted MTC's and CGS's second motions to dismiss, finding that Mr. Golden had "not alleged any facts that might support an inference that he held a reasonable, good faith belief that the perceived harms he reported were violations of the ADEA." *Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 282 (D.D.C. 2017). However, because "the Court believe[d] that the deficiencies [in the complaint might] be cured through subsequent pleading, the Court [] dismiss[ed] the complaint without prejudice and grant[ed] Golden leave to

amend the complaint," including by adding CGSI as a defendant. *Id.* Once Mr. Golden filed his

Second Amended Complaint, ECF No. 43, MTC and CGSI both moved to dismiss. *See* MTC's

3d Mot. Dismiss ("MTC's Mot."), ECF No. 45; CGSI's Mot. Dismiss ("CGSI's Mot."), ECF

No. 46. Their motions are now ripe for decision.

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain

statement of the claim" in order to give the defendant fair notice of the claim and the grounds

upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

(per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate

likelihood of success on the merits; rather, it tests whether plaintiff has properly stated a claim.

*See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v.

Fitzgerald*, 457 U.S. 800 (1982). A court considering such a motion presumes that the

complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See,

e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Nevertheless,

"[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a

plaintiff's factual allegations "must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements," are therefore insufficient to

withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal

conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

## IV. ANALYSIS

### A. MTC's Motion to Dismiss

Mr. Golden's Second Amended Complaint contains claims of retaliation, wrongful discharge, and age discrimination against MTC. MTC has moved to dismiss on the grounds that a portion of Mr. Golden's claims are time-barred, that he did not plead a plausible inference of retaliation, that he did not state a prima facie case for age discrimination, and that he did not state a claim for wrongful discharge. *See generally* MTC's Mem. Mr. Golden responds that it "is simply not the case" that his Second Amended Complaint is based off of incidents that occurred before April 24, 2015, that he has pleaded a prima facie case of age discrimination, and that his Second Amended Complaint contains sufficient facts to plead a plausible inference of retaliation. *See generally* Pl.'s Opp'n MTC's Mot. For the reasons given below, the Court finds that Mr. Golden's claims for retaliation and discrimination based on events occurring before April 24, 2015 are time-barred, but that Mr. Golden has pleaded sufficient facts to state timely claims for discrimination and retaliation based on his termination. However, the Court finds that Mr. Golden has failed to state a claim for wrongful termination, and therefore dismisses that claim.

### 1. Statute of Limitations

MTC contends that all of Mr. Golden's statutory claims except those based on his termination are time-barred. *See* MTC's Mem. at 11–12. In particular, it first argues that any claims that were contained in both Mr. Golden's first EEOC charge and his second EEOC charge are barred because he did not file suit on those twice-alleged claims within 90 days of the issuance of the EEOC's first right-to-sue letter. *Id.* Similarly, it argues that any claim based on

actions that occurred before April 24, 2015, are time-barred because Mr. Golden did not file his second EEOC charge until February 18, 2016. *Id.* at 12. Mr. Golden responds that the actions about which he has sued occurred after April 24, 2015, because "the retaliatory conduct that serves as a basis for his administrative and judicial complaints stem from (1) being placed on a second PIP that should have never happened because it was not warranted; and[] ultimately (2) being terminated for it in July 2015 for allegedly not successfully completing the requirements of a PIP despite receiving a satisfactory rating from his supervisors during that particular rating period." Pl.'s Opp'n MTC's Mot. at 7. The Court finds that claims based on allegedly discriminatory or retaliatory actions that occurred prior to April 24, 2015, are time-barred, including Mr. Golden's placement on the second PIP in March 2015. However, it should be noted that this limitation on Mr. Golden's ability to sue for his placement on the PIP does not mean that he cannot use his placement on the PIP as evidence that his ultimate termination was discriminatory or retaliatory. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

"An individual who wishes to challenge an employment practice under the ADEA must first file a charge with the EEOC." *Faison v. District of Columbia*, 664 F. Supp. 2d 59, 64 (D.D.C. 2009). "In the District of Columbia, where there is a local anti-discrimination agency, this charge must be filed within 300 days of the occurrence of the allegedly unlawful practice." *Id.* If an EEOC charge is not filed within that period, a plaintiff cannot challenge the unlawful practice in court. *Schuler v. PricewaterhouseCoopers, LLC*, 595 F.3d 370, 373 (D.C. Cir. 2010) (citing 29 U.S.C. § 626(d)(1)). If the EEOC elects not to pursue the complainant's case, it issues a right-to-sue letter. *See* 29 U.S.C. § 626(e). Upon receipt of that letter, a complainant has 90

days to bring suit. *Id.*; 29 C.F.C. § 1614.407(a); *see also Colbert v. Potter*, 471 F.3d 158, 160 (D.C. Cir. 2006).

Mr. Golden submitted his second EEOC charge on February 18, 2016. *See* 2d EEOC Charge at 2. Three-hundred days before February 18, 2016, is April 24, 2015. Mr. Golden was placed on a second PIP in March 2015 and was terminated in July 2015. 2d Am. Compl. ¶¶ 15–16. Therefore, Mr. Golden's claims based on his placement on his second PIP in 2015 are undeniably untimely unless it and another timely action, such as his termination, can be found to constitute a single, coherent employment practice.

The Supreme Court has "repeatedly interpreted the term '[employment] practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts." *Morgan*, 536 U.S. 111. "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 110. The Court has also repeatedly held that "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 112; *see also Nono v. George Washington Univ.*, 245 F. Supp. 3d 141, 147 (D.D.C. 2017) ("[P]laintiffs must file charges that are timely as to each discrete alleged discriminatory act, and prior discriminatory acts that occurred outside the time period are not actionable.")

For example, in *Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980), the Court found that a claim based on an allegedly discriminatory decision to deny a professor tenure was time-barred, even though the effect of that tenure denial was the professor's placement on a year-long terminal contract that resulted in his termination, within the limitations period, upon the expiration of the contract. The Court explained that "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful," *Id.* (quoting *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979)). Because

the professor had not alleged that "the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure," but instead had simply alleged that his denial of tenure, which occurred outside of the limitations period, was discriminatory, his complaint failed to state a timely claim for employment discrimination. *Id.* at 258.

Mr. Golden's case is distinguishable from *Ricks* because Mr. Golden has called into question the propriety of his termination itself, explaining that he "was terminated by Job Corps for *allegedly* not successfully completing the requirements of the 2015 PIP despite receiving a satisfactory rating from Mr. Stroman," his supervisor who had instituted the PIP, "during the same time period." 2d Am. Compl. ¶ 16 (emphasis added). He has, in effect, alleged two discriminatory or retaliatory acts: his placement on the PIP and his "unjustifiabl[e]" termination. *Id.* ¶ 18. Additionally, as MTC has also highlighted, Mr. Golden had already complained about his placement on the second PIP in his first EEOC charge and did not file suit based on that charge for 197 days, far more than the 90 days permitted under the statute. *See* MTC's Mem. at 11; 1st Right-to-Sue Letter, ECF No. 45-4. Accordingly, while Mr. Golden's claims based on his placement on the PIP are untimely for two reasons and are thus not actionable, his claims based on his termination are, and therefore remain.

### 2. Retaliation

MTC has also moves to dismiss Mr. Golden's retaliation claim on the grounds that Mr. Golden has failed to plausibly plead that he engaged in protected activity and that even if he had, he has failed to plead a causal link between his protected activity and his termination. *See* MTC's Mem. at 13. MTC bases this argument in part on its contention that portions of Mr. Golden's Second Amended Complaint contradict his First Amended Complaint and therefore should be

disregarded. *Id.* MTC also argues that Mr. Golden has failed to exhaust his administrative remedies because his "new allegations of protected activity are not found in and do not correspond with those in his Charge." *Id.* at 16. Mr. Golden responds that the facts alleged in his First and Second Amended Complaints are not contradictory and also that the facts alleged in his Second Amended Complaint were contained within the broad language used in his second EEOC charge. *See* Pl.'s Opp'n MTC's Mot. at 8–10. The Court agrees with Mr. Golden that he has succeeded in stating a claim for retaliation and that he has exhausted his administrative remedies as to that claim. Therefore, the Court denies MTC's motion as to Mr. Golden's retaliation claim.

The ADEA makes it unlawful for an employer to retaliate against an employee for "oppos[ing] any practice made unlawful" by the statute. *See* 29 U.S.C. § 623(d). To state a claim for retaliation under the ADEA, a plaintiff must allege that "(1) he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009); *see also Tomasello v. Rubin*, 167 F.3d 612, 619 (D.C. Cir. 1999) ("[T]he test for determining retaliation under the ADEA and Title VII is identical.") (citation omitted)). The D.C. Circuit has specified that "an employee seeking the protection of the opposition clause [must] demonstrate a good faith, reasonable belief that the challenged practice violates'" the ADEA. *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005) (quoting *Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1020 (D.C. Cir. 1981)).

In its motion to dismiss Mr. Golden's First Amended Complaint, MTC argued both that Mr. Golden had failed to plead that he had engaged in any protected activity prior to his

termination[3] and also that he had failed to plead causation between any allegedly protected activity and his termination. *See Golden*, 266 F. Supp. 3d at 283. The Court granted MTC's motion, agreeing with MTC that its "supposed failure to address Golden's litany of administrative concerns, standing alone, does not give rise to a reasonable inference that Defendants engaged in age discrimination." *Id.* at 284. It continued that "[i]f Golden's internal charge about his various administrative concerns is to serve as the predicate for his retaliation claim, Golden must allege some set of facts from which to infer that he reasonably believed Defendants' failure to act was a manifestation of age discrimination." *Id.* at 285. "Although Golden allegedly submitted an internal grievance claiming 'age discrimination' and 'hostile work environment,' the facts underpinning those claims, as alleged in the complaint, simply do not allow the Court to conclude that he had a 'reasonable, good faith belief' that defendants violated the ADEA . . . . [and a]ccordingly, Golden has not pled a statutorily protected activity for which a retaliation claim might lie under the ADEA." *Id.* at 287. The Court dismissed the claim without prejudice, noting that it was "not convinced that the Complaint could not be cured through the allegation of additional facts." *Id.*

---

[3] Mr. Golden explained in his First Amended Complaint that he submitted the following complaints to his supervisors: "(1) students were going six to eight months without a qualified instructor; (2) overcrowded classrooms; (3) lack of budget allocation for specific projects; (4) Defendants' refusal to provide proper training opportunities to Plaintiff and his staff; yet providing the same opportunity to other staff members; (5) Defendants' refusal to hire qualified staff; (6) Defendants' failure to process purchase orders requested by Plaintiff's staff (7) failure to monitor construction work performed at Potomac Job Corps by outside contractors; (8) lack of inventory control equipment at the Corps' facility; (9) Defendants' refusal to order equipment for students and staff members; (10) Defendants' failure to provide a budget; . . . (11) failure to provide air-conditioning in classrooms during summer months; (12) failure to provide heat in classrooms during the winter months; (13) failure to provide working computers for students in classrooms." 1st Am. Compl. ¶ 10. He specified that his complaints were not limited to these topics, however. *Id.*

Taking advantage of the Court's dismissal without prejudice, Mr. Golden has now clarified what other complaints he raised with MTC. In his Second Amended Complaint, he explains that he also voiced his concerns about receiving less pay than younger and less credentialed employees, not being allowed to attend trainings that younger employees were allowed to attend, delays in receiving approval for his supply purchase orders that younger managers did not experience, and not receiving bonuses for work for which younger employees received bonuses. 2d Am. Compl. ¶ 11. He explains that he first raised these concerns in April 2011 and subsequently raised them again in December 2013, July 2014, February 2015, and May 2015. *Id.* ¶¶ 11–12.

MTC argues that the facts alleged in Mr. Golden's Second Amended Complaint should not be accepted at face value for two reasons. First, MTC points out that "[i]instead of adding additional facts that might create a plausible inference that MTC's alleged failure to address the 13 specified administrative problems he raised in 2011 was because of his age," Mr. Golden has now raised an entirely different set of complaints than in his first EEOC charge and First Amended Complaint, and he now alleges that he raised these new complaints more than twice as many times as he previously alleged. *See* MTC's Mem. at 13. Additionally, MTC highlights that in his first EEOC charge, Mr. Golden alleged, in between two sentences regarding events that occurred during the fall of 2014, that he "discovered [that he] was paid less than other employees for the same position and similar duties." 1st EEOC Charge. Therefore, MTC argues, Mr. Golden's claim that he complained about receiving disparate pay in 2011 directly conflicts with his first EEOC charge, which implies that he learned about the disparate pay during the fall of 2014. For these reasons, MTC argues, these new "alternative facts" "seem to lack [a] good faith basis." *Id.* at 14.

It can be "appropriate for the court to look beyond the amended complaint to the record, which includes the original complaint," when evaluating whether a plaintiff has stated a claim upon which relief may be granted. *See W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) (citing *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979) and 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990)). While reconcilable small variations between the complaints are acceptable, "[w]here a plaintiff blatantly changes his statement of the facts in order to respond to the defendants['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint[,] a court is authorized to accept the facts described in the original complaint as true." *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 171 (D.D.C. 2013) (internal quotation marks and citations omitted) (alterations in original). This is because district courts are was "not required to accept representations that the court view[s]" in light of previous filings as "nonsensical," *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324 (Fed. Cir. 1998), or "false and sham," *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327, 1329–30 (9th Cir. 1981).

The Court finds that the discrepancies MTC has highlighted are not substantive enough to warrant the striking of these factual allegations from Mr. Golden's Second Amended Complaint. First, when Mr. Golden described the concerns he raised with his supervisors in April 2011 in his First Amended Complaint, he specified that his complaints "included but were not limited to the following," 1st Am. Compl. ¶ 10, implying that he also made other complaints to his supervisors. He has now clarified what those other complaints were. *See* 2d Am. Compl. ¶ 11. While it is certainly suspicious that, if Mr. Golden had indeed raised concerns with his supervisor that younger employees were receiving preferential treatment, he did not include his reporting of

those concerns in his original complaint, his original complaint did expressly state that he raised more concerns than the thirteen enumerated in his original complaint to his supervisors. Therefore, his Second Amended Complaint does not directly contradict his First Amended Complaint in this regard. While the incongruity of these allegations may impact the plaintiff's credibility, that is a matter to be determined by the finder of fact.

Second, MTC argues that because Mr. Golden's Second Amended Complaint claims that he first complained about his allegedly disparate pay in 2011, but his first EEOC charge implies that he did not even learn about the disparate pay until 2014, his allegation regarding when he discovered and first complained about his allegedly disparate pay should be disregarded. However, while Mr. Golden's first EEOC charge *implies* that he first learned about his disparate pay in 2014, it does not state that that is when he discovered it outright. But even if it did, that would not require the Court to discount the two other instances Mr. Golden alleges he complained to his supervisors about his disparate pay and treatment after the fall of 2014, the two instances temporally closest to his placement on the second PIP and ultimate termination. *See* 2d Am. Compl. ¶ 12(d).

Similarly, MTC expresses concern that Mr. Golden has more than doubled the number of instances during which he complained about his treatment to his supervisors and has included instances not found in either of his EEOC charges or his First Amended Complaint. *See* MTC's Mem. at 13–14. Just as enumerating what other complaints Mr. Golden made to his supervisor does not contradict the list of complaints he says he raised in his First Amended Complaint, adding instances when he is alleged to have complained to supervisors also does not contradict his contention in his First Amended Complaint that he complained in April 2011 and October 2013. Because MTC "has not identified any true contradictions to undermine the credibility of

the amended complaint," the Court will accept the additional facts included in the Second Amended Complaint as true. *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 198 (D.C. Cir. 2004).

Therefore, taking the facts in Mr. Golden's Second Amended Complaint as true, the Court must determine whether, given that he is alleged to have complained about disparate pay and treatment based on his age in February and May 2015, he has successfully stated a claim for retaliation.

"In order to sustain a claim for retaliation at the motion-to-dismiss stage, 'a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) his employer took an adverse personnel action against him; and (3) a causal connection exists between the two.'" *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 89 (D.D.C. 2016) (quoting *Keys v. Donovan*, 37 F. Supp. 3d 368, 372 (D.D.C. 2014)); *see Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015). The third prong of the pleading standard—causation—"may be established if the plaintiff alleges that the employer had knowledge of the protected activity and that the adverse action occurred soon thereafter." *Greer*, 113 F. Supp. 3d at 311 (citation and internal quotation marks omitted). Courts have held that "mere temporal proximity" between a protected activity and an adverse employment action can establish sufficient evidence of causality, but have also "uniformly h[eld] the temporal proximity must be 'very close.'" *Keys*, 37 F. Supp. 3d at 372 (collecting cases). Although "neither the Supreme Court nor the [D.C. Circuit] has established a bright-line three-month rule," *id.* at 373, "three months is perceived as approaching the outer limit," *Greer*, 113 F. Supp. 3d at 311 (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012))). The closeness of this temporal proximity is "adequate to permit an inference of retaliatory motive," at least at the prima facie stage. *Holcomb v. Powell*, 433 F.3d

889, 903 (D.C. Cir. 2006) (quoting *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984)).

Mr. Golden has alleged that he engaged in what he believed was protected activity—complaining that he was receiving less pay and being treated less well because of his age—two months before he was terminated. *See* 2d Am. Compl. ¶ 12(d). Additionally, he alleges that he engaged in protected activity one month before he was placed on his second PIP, and while his placement on the PIP is not itself actionable, it can serve as background evidence demonstrating that his termination was discriminatory or retaliatory. At this stage of the proceedings, these alleged facts are sufficient to raise a plausible inference that MTC retaliated against Mr. Golden.

MTC has raised several additional arguments to support its contention that Mr. Golden has not properly pleaded a claim for retaliation. First, it argues that Mr. Golden has failed to exhaust his administrative remedies because he has alleged new instances of protected activity in his Second Amended Complaint that do not correspond with those found in his second EEOC charge. *See* MTC's Mem. at 16. To support its contention that Mr. Golden's factual allegations in his administrative charge must perfectly match the factual allegation in his complaint, MTC cites to two out-of-circuit cases. However, neither of these cases establish as strict a pleading requirement as MTC suggests. In *Chacko v. Patuxent Inst.*, the court held that "a plaintiff fails to exhaust his administrative remedies where, as here, his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." 429 F.3d 505, 506 (4th Cir. 2005). Additionally, in *Johnson v. Portfolio Recovery Assocs. LLC*, the court found that, where a "[p]laintiff did not explicitly include retaliation in his EEOC charge," and did not "show that his retaliation claim can be fairly read as being related to or expected to follow from the administrative investigation of his race discrimination claim or any

other allegations in the EEOC charge," he did not exhaust his administrative remedies as to his retaliation claim. 682 F. Supp. 2d 560, 577 (E.D. Va. 2009). Neither of these holdings apply to Mr. Golden's second EEOC charge, which includes an allegation that as a result of what he perceived to be disparate treatment, he "filed multiple internal EEO complaints that were left unaddressed." 2d EEOC Charge. In his Second Amended Complaint, he included further details of when he made those complaints, to whom he made them, and what disparate treatment he specifically complained about. *See* 2d Am. Compl. ¶¶ 11–12(d). Because his retaliation claim here is "'like or reasonably related to the allegations of the charge and grow[] out of such allegations,'" *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)), and because the claim raised here could "arise from 'the administrative investigation that c[ould] reasonably be expected to follow'" from the allegations in his second EEOC charge, *id.* (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)), "the connection between the charge and the claim is sufficient." *Chacko*, 429 F.3d at 509.

Second, MTC argues that because Mr. Golden has failed to allege that Edwin Stroman, the supervisor who erroneously placed him on his second PIP in 2015, and then erroneously fired him, knew about his EEO complaints, he has failed to plead the causation prong of retaliation. *See* MTC's Mem. at 17. It is true that "[t]he causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). However, direct allegations of an employer's knowledge of the plaintiff's protected activity are not required for a claim of retaliation to survive a motion to dismiss. *See McManus v. Kelly*, 246 F. Supp. 3d 103, 116 (D.D.C. 2017)

(contention that because plaintiff's "complaint does not affirmatively allege that the deciding officials were aware that she had engaged in protected activity," her "retaliation claims fail as a matter of law" "finds no support in the governing law"). Indeed, even when opposing a motion for summary judgment, rather than a motion to dismiss, a plaintiff "needn't provide direct evidence that his supervisors knew of his protected activity; he need only offer circumstantial evidence that could reasonably support an inference that they did." *Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009). And the D.C. Circuit has "repeatedly recognized" that allegations or evidence "that 'the employer had knowledge of the employee's protected activity, and the adverse personnel action took place shortly after that activity'—is 'adequate to permit an inference of retaliatory motive,' at least at the prima facie stage." *Id.* (quoting *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C .Cir. 2006).

Here, Mr. Golden has alleged that MTC was aware of his protected activity, explaining that he hand-delivered EEO complaints to Myra DeLoatch, "an MTC employed EEO Officer at the Corps," on February 20, 2015, and May 20, 2015. 2d Am. Compl. ¶ 12. Within one month of submitting the first of those complaints, Mr. Golden was placed on his second PIP, and within two months of submitting the second, he was terminated. These events are sufficiently close in time to allow for an inference that MTC's motivations were retaliatory, and therefore, Mr. Golden's retaliation claim cannot be dismissed because he has not alleged that the MTC officials involved in his firing him knew about his EEO complaints.

MTC's final argument regarding Mr. Golden's retaliation claim is that he has "offer[ed] no facts that would tend to demonstrate that" the reason MTC has given for his termination— failing his second PIP— "was pretext and that the real reason was because he engaged in protected activity." MTC's Mem. at 18. However, "[a] plaintiff alleging retaliation faces a low

hurdle at the motion to dismiss stage, and need not present evidence of pretext," *Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2010) (citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219–20 (D.C. Cir. 2006)), because "[t]emporal proximity between a complaint of discrimination and an adverse action, such as termination, can support a jury's finding of a causal link." *Iweala v. Operational Techs. Servs., Inc.*, 634 F. Supp. 2d 73, 83 (D.D.C. 2009) (internal quotation marks and citations omitted). Because Mr. Golden has already met all of the pleading requirements for retaliation, including sufficient facts to infer causation, his retaliation claim as to his termination survives MTC's motion to dismiss.

### 3. Age Discrimination

MTC has also challenged Mr. Golden's age discrimination claim on the grounds that he did not exhaust his administrative remedies regarding that claim and has failed to plead facts supporting an inference of age discrimination. *See* MTC's Mem. at 21. Mr. Golden responds that the broad language he used in his second EEOC charge encompassed the allegation of discriminatory treatment in his Second Amended Complaint, and therefore that he has exhausted his administrative remedies as to his age discrimination claim. *See* Pl.'s Opp'n MTC's Mot. at 11–12. He further responds that he has alleged sufficient facts at this stage in the litigation to state a claim of age discrimination under the ADEA. *Id.* at 13–14. As explained below, the Court finds that Mr. Golden exhausted his administrative remedies as to his age discrimination claim and also sufficiently pleaded the claim to survive MTC's motion to dismiss.

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire . . . or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). When analyzing a discrimination claim under the ADEA, courts apply the framework developed in the context of Title VII litigation—"that is, where direct evidence of discriminatory

intent is not available, a party may establish unlawful age discrimination by relying on the familiar burden-shifting scheme first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [] (1973)." *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999). To establish a prima facie case of age discrimination under the *McDonnell Douglas* framework, an employee must establish that "he belongs in the statutorily protected age group, he was qualified for the position, he was terminated, and he was disadvantaged in favor of a younger person." *Id.* (citing *Paquin v. Fed. Nat'l Mortg. Ass'n*, 119 F.3d 23, 26 (D.C. Cir. 1997)). However, "the Supreme Court of the United States has explained that the *McDonnell Douglas* test is only an *evidentiary* standard—*i.e.*, it does not by any means displace the notice pleading requirements of Rule 8(a) or otherwise impact the plaintiff's ultimate burden of establishing the essential elements of a discrimination claim—and thus, that a plaintiff need not plead facts that establish a prima facie case in order for the complaint to survive a Rule 12 motion to dismiss." *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 303 (D.D.C. 2015) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement.")). In order to survive a motion to dismiss for failure to state claim, a complaint needs to include "only enough facts to [nudge] a claim to relief . . . across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Therefore, MTC's citations to Third Circuit and D.C. Court of Appeals case law notwithstanding, the Court must determine whether Mr. Golden's alleged facts "state a facially plausible claim." *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012) (citing *Iqbal*, 556 U.S.

at 678). The Court finds that they do. Mr. Golden has alleged that he "was treated less favorably than similarly situated, 'younger managers employed by Job Corps who did not satisfactorily perform their job duties during Golden's tenure.'" Pl.'s Opp'n MTC's Mot. at 13 (quoting 2d Am. Compl. ¶ 19). He alleges that while he was terminated, younger managers (whom he names) received lesser forms of discipline despite the fact that they did not satisfactorily perform their jobs. *Id.* These allegations are sufficient to state a plausible claim of age discrimination at this stage. *See Swierkiewicz*, 534 U.S. at 514 (holding that a complaint containing details including the events leading up to a termination, the dates of relevant events, and the ages of at least some of the relevant decision makers satisfied Rule 8's pleading standard for an age discrimination claim under the ADEA).

MTC also argues that Mr. Golden failed to exhaust his administrative remedies as to his age discrimination claim because his second EEOC "[c]harge does not allege that younger people received progressive discipline, or that younger people received 'the opportunity to cure their performance after lesser methods of discipline were imposed upon them.'" MTC's Mem. at 21 (quoting 2d Am. Compl. ¶ 19). Instead, Mr. Golden specifically mentions that younger staff members received better training and compensation than he did. *See id.* (citing 2d EEOC Charge). For this reason, MTC claims, the age discrimination complained of in the charge is not "reasonably related" to the discrimination complained of in the complaint. *See id.* (citing *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010)).

While it is true that Mr. Golden did not mention how any of his comparators were treated when describing his termination in his second EEOC charge, as previously explained, "the fact that [plaintiff] describe[s] h[is] allegations with greater specificity in these proceedings does not establish that []he failed adequately to present them at the administrative level." *Williams v.*

*Dodaro*, 576 F. Supp. 2d 72, 82–83 (D.D.C. 2008). Mr. Golden included in his charge a list of actions that MTC took that he believed were improper, including disparate compensation and treatment, placement on a PIP, and termination. *See* 2d EEOC Charge. He then, following this list, informed the EEOC that he was discriminated and retaliated against in violation of the ADEA. *Id.* He did not specify which actions in the previous list he believed were discriminatory or retaliatory, or whether there were any actions on the list that he believed were one but not the other. "Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008). Therefore, because Mr. Golden did not specify which of MTC's actions he believed were discriminatory or retaliatory, the Court will read his charge as alleging that each action was both discriminatory and retaliatory. Because Mr. Golden included a claim for discriminatory termination in his second EEOC charge, the same termination he complains of in his Second Amended Complaint, he has exhausted his administrative remedies as to that claim. Although the exhaustion requirement requires a plaintiff to administratively exhaust each *claim*, it does not require that a plaintiff include in an administrative charge all the evidence upon which a claim is based.

### 4. Wrongful Discharge

Mr. Golden's Second Amended Complaint also includes a common law claim for wrongful discharge. 2d Am. Compl. ¶ 24–30. MTC has moved to dismiss this claim on the ground that Mr. Golden was an at-will employee and that he has not put forth any public policy that his termination violated. *See* MTC's Mem. at 23–26. Mr. Golden's opposition to MTC's motion to dismiss contains no arguments to counter MTC's contentions regarding the sufficiency of his pleadings. Indeed, Mr. Golden's opposition to MTC's motion only mentions the phrase

"wrongful termination" or "wrongful discharge" twice, in the introduction, when it describes the claims contained in his Second Amended Complaint. *See* Pl.'s Opp'n MTC's Mot. at 1–2. MTC argues that because Mr. Golden did not counter its arguments in his opposition to its motion, he has conceded dismissal of his wrongful discharge claim. *See* MTC's Reply at 6, ECF No. 49 (citing *Estate of Abtan v. Blackwater Lodge & Training Ctr.*, 611 F. Supp. 2d 1, 8 n.5 (D.D.C. 2009)). Although the D.C. Circuit has previously stated that failure to oppose an argument can be deemed as conceding it, *see Stubbs v. Law Office of Hunter C. Piel, LLC*, 672 F. App'x 3, 3 (D.C. Cir. 2016) ("The appellants' response to the motion to dismiss for failure to state a claim was unresponsive to the arguments raised in the motion, and the district court therefore correctly concluded that the motion to dismiss was conceded pursuant to Local Rule 7(b)." (citing *Cohen v. Bd. of Trs. of the Univ. of D.C.*, 819 F.3d 476, 484 (D.C. Cir. 2016))), recent case law in this Circuit potentially necessitates additional analysis from this Court.[4]  Therefore, the Court will evaluate whether Mr. Golden has stated a plausible claim for wrongful discharge on the face of his Second Amended Complaint. The Court concludes that he has not.

---

[4] Courts in this district have in the past held that Local Civil Rule 7(b), which provides that a court may treat a motion as conceded if an opposition is not timely filed, allows courts to treat arguments unaddressed in an opposition as conceded. *See e.g.*, *Estate of Abtan v. Blackwater Lodge & Training Ctr.*, 611 F. Supp. 2d 1, 8 n.5 (D.D.C. 2009). However, the D.C. Circuit has recently clarified that "a party may rest on its complaint in the face of a motion to dismiss if the complaint itself adequately states a plausible claim for relief" and that a court should not turn "what should be an attack on the legal sufficiency of the complaint into an attack on the legal sufficiency of its response in opposition to the motion to dismiss." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 345 (D.C. Cir. 2018). The *WashTech* case concerned a situation in which a plaintiff had stated a plausible claim for relief and then had only thinly explained in its opposition to the defendant's motion to dismiss that "it adhered to its position that its complaint was well-pleaded." *Id.* Because Mr. Golden has filed an opposition, this Court, in an abundance of caution, and in order to hold MTC to its burden of demonstrating that "no legally cognizable claim for relief exists," 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2015), will evaluate whether Mr. Golden's Second Amended Complaint states a claim for wrongful discharge on its face.

"It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991). "[U]nless a contrary contractual intent is clearly expressed, all employment is at-will." *Turner v. Fed. Express Corp.*, 539 F. Supp. 2d 404, 410 (D.D.C. 2008). "The presumption of at-will employment is rebutted only where the parties clearly state an intention to place limits on the employer's right to terminate." *Id.* (citing *Perkins v. Dist. Gov't Emps. Fed. Credit Union*, 653 A.2d 842, 842 (D.C. 1995)). For example, "assurances by an employer in a personnel or policy manual distributed to all employees that are clear enough in limiting the right to terminate to specific causes or events will overcome the presumption of at-will employment." *Sisco v. GSA Nat'l Capital Fed. Credit Union*, 689 A.2d 52, 55 (D.C. 1997). Additionally, "[i]n the District of Columbia, wrongful termination in violation of a clear public policy is an exception to the traditional at-will employment doctrine." *Bowie v. Gonzales*, 433 F. Supp. 2d 24, 30 (D.D.C. 2006).

Mr. Golden's Second Amended Complaint mentions an employee handbook in order to demonstrate that MTC did not follow standard operating procedures when it placed him on his second PIP and then terminated him. *See* 2d Am. Compl. ¶¶ 26–29. While he did not submit the handbook with any of his filings, MTC has submitted relevant excerpts of the handbook as an exhibit to its motion to dismiss. *See* MTC's Mot. Ex. 4, ECF No. 45-6. Because Mr. Golden references the handbook in his Second Amended Complaint, the Court may properly consider its contents while adjudicating MTC's motion to dismiss. *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); *see also Bradley v. Nat'l Collegiate Athletic Assoc.*, 249 F. Supp. 3d 149, 173 n.11 (D.D.C. 2017) ("[B]ecause the plaintiff incorporates the Sports Medicine

Handbook into her Amended Complaint, *see* Removal Notice, Ex. 5 (Am. Compl.) ¶ 42, the Court will consider the Sports Medicine Handbook in its analysis.").

The handbook Mr. Golden references in his Second Amended Complaint specifies that it "should not be interpreted as a contract between the Company and [the employee]." MTC's Mot. Ex. 4 at 1. It continues, in bolded and italicized font:

> [E]mployment with the Company is entered into voluntarily and can be terminated, with or without cause and with or without notice, at any time at the option of either the Company or [the employee]. Nothing in this handbook, or any other document, including benefit plan descriptions, creates or is intended to create a promise or representation of continued employment for [the employee].

*Id.* Because the handbook "contain[s] language clearly reserving the employer's right to terminate at will," the Court need not determine whether the "manual purport[s] to restrict the grounds for termination" of an employee. *See Sisco*, 689 A.2d at 55.

Having determined that Mr. Golden's employment with MTC was at-will, the Court next queries whether any existing public policy exception applies to his termination. As MTC points out, Mr. Golden has failed to allege in any of his complaints that his termination violated any public policy. *See* MTC's Mem. at 23; *see also* 2d Am. Compl. ¶¶ 24–30.

"Whether a discharge violates public policy is determined on a case-by-case basis, guided by the concept that a wrongful termination cause of action must be 'firmly anchored in either the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon.'" *Bowie*, 433 F. Supp. 2d at 30 (quoting *Warren v. Coastal Int'l Secs., Inc.*, 96 F. App'x 722, 722–23 (D.C. Cir. 2004)). However, "an important limiting principle" of the public policy exception "is that a plaintiff may not seek relief under a theory of wrongful discharge based upon a statute that carries its own remedy for violation," such as Title VII or the ADEA. *Lockhart v. Coastal Int'l Sec., Inc.*, 5 F. Supp. 3d 101, 106 (D.D.C. 2013).

Here, Mr. Golden has not put forth any public policy, such as preventing the termination of employees when they refuse to break the law for their employers, that might entitle him to consideration under the public policy exception. *See Adams v. George W. Cochran & Co., Inc.*, 597 F.2d 28, 34 (D.C. 1991). "[I]n the absence of any identified public policy, the Court clearly cannot conclude that the public policy relied upon is 'firmly anchored' in the Constitution or a statute or regulation." *Davis v. Gables Residential/H.G. Smithy*, 525 F. Supp. 2d 87, 102 (D.D.C. 2007) (citing *Bowie*, 433 F. Supp. 2d at 30). Therefore, the Court finds that Mr. Golden has failed to state a claim for wrongful discharge and dismisses his claim.

### B. CGSI's Motion to Dismiss

Mr. Golden's Second Amended Complaint also includes claims of retaliation, wrongful discharge, and age discrimination against CGSI. CGSI has moved to dismiss on several grounds, arguing that the Second Amended Complaint does not sufficiently allege that CGSI was Mr. Golden's employer or that it discriminated or retaliated against him; that his age discrimination claim is time-barred because he first included that claim in this suit 465 days after receiving his right-to-sue letter from the EEOC; and that the Second Amended Complaint fails to state a wrongful termination claim. *See generally* CGSI's Mem. P. & A. Supp. CGSI's Mot. Dismiss ("CGSI's Mem."), ECF No. 46. Mr. Golden responds that he has alleged sufficient facts to demonstrate that CGSI was his employer and that his age discrimination claim is timely because his age discrimination claim is so similar to his retaliation claim that his age discrimination claim relates back to the original date he filed this suit. *See* Pl.'s Opp'n CGSI's Mot. at 5–11, ECF No. 47. Just as with MTC's motion, Mr. Golden does not contest CGSI's assertion that he has not stated a claim for wrongful termination. For the reasons set forth below, the Court finds that Mr. Golden has failed to state a claim for wrongful termination and did not timely file his claim for

age discrimination. However, the Court finds that he succeeded in stating a timely claim for retaliation and therefore does not dismiss his retaliation claim.

### 1. Whether CGSI was Mr. Golden's Employer

CGSI seeks to dismiss the claims against it on the ground that it never served as Mr. Golden's employer and therefore could not have discriminated or retaliated against him in violation of the ADEA or wrongfully discharged him. In its previous Memorandum Opinion, the Court found that Mr. Golden's First Amended Complaint did not allege sufficient facts to infer that CGS (which at that point had been erroneously sued instead of CGSI) had employed Mr. Golden, because "[a]lthough Golden allege[d] that CGSI maintained a human resources director at the [Potomac Job Corps facility] . . . [that] oversaw the duties and responsibilities of MTC's hired staff including [Golden], it is not tantamount to an allegation that CGSI could control and direct both the details and results of Golden's work or that it controlled the terms and conditions of his employment." *Golden*, 266 F. Supp. 3d at 287 n.8 (internal citations and quotation marks omitted). Mr. Golden has alleged new facts regarding CGSI's control over his work and now contends that he has alleged sufficient facts to allow for an inference at this stage in the proceedings that both MTC and CGSI employed him. The Court agrees. While Mr. Golden's description of how much control CGSI exercised over him at the Job Corps site is still thin, the complaint now contains sufficient factual allegations to allow for an inference that CGSI also employed him.

The D.C. Circuit has "recognized two largely overlapping articulations of the test for identifying joint-employer status." *Al-Saffy v. Vilsack*, 827 F.3d 85, 96 (D.C. Cir. 2016) (citing *Redd v. Summers*, 232 F.3d 933, 938–39 (D.C. Cir. 2000)). The first test, articulated in *Spirides v. Reinhardt*, asks the court to examine the "'economic realities' of the work relationship," and

especially whether the "employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved." 613 F.2d 826, 831–32 (D.C. Cir. 1979). In particular, the court should look at:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 832. The second test, incorporated in *Redd*, "borrows language from *NLRB v. Browning-Ferris Industries of Pennsylvania*, 691 F.2d 1117 (3d Cir. 1982), asking whether the employer, while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Al-Saffy*, 827 F.3d at 96–97 (internal quotation marks and citations omitted).

In Mr. Golden's First Amended Complaint, which the Court warned did not plead sufficient facts to allow for an inference that CGS or CGSI jointly employed him with MTC, Mr. Golden alleged that "he was employed by Defendant Management & Training Corporation," but does not mention that he was also employed by CGS or CGSI. 1st Am. Compl. ¶ 4. Additionally, the extent of Chugach's supervision over him is articulated as follows: "With the assistance and understanding of Defendant MTC, [Chugach's] human resources director at the Corps site—Grace Jabril—oversaw the duties and responsibilities of MTC's hired staff including Plaintiff." *Id.* ¶ 6. While he alleged that he complained of what he believed to be unfair treatment to both

Chugach and MTC, all other allegations in his complaint involved employees of MTC, but not Chugach. *See generally* 1st Am. Compl.

Mr. Golden has now added several factual allegations to beef up his contention that he was also employed by CGSI. First, he now alleges that "he was employed by Defendant Management & Training Corporation and Chugach Government Services, Inc." 2d Am. Compl. ¶ 4. He further explains that "CGSI's main focus is on the management and operation of Job Corps. CGSI was also responsible for the overall operations of the Job Corps facility." *Id.* ¶ 5. Mr. Golden alleges that "[t]ogether, CGSI and MTC (collectively 'Job Corps') operate nationally and internationally under the name 'Job Corps.' Each entity works in conjunction with one another to operate and manage the Job Corps facilities where Plaintiff worked as well as around the world. Each entity employed Plaintiff jointly. Correspondence – regardless of whether the author was an employee of CGSI or MTC— at all times contained the 'Job Corps' logo." *Id.* ¶ 7.[5]

With regard to his own position, Mr. Golden explains that "[h]e was supervised on all aspects of his job by MTC and CGSI management personnel." *Id.* ¶ 8. He further specified that one of his "core responsibilities included ensuring that the facility was properly equipped with supplies" and that all of his purchase orders for supplies "required the approval of the CGSI finance director - Ronald Young before submission." *Id.* ¶ 10. When he began to fear that he was being discriminated against based on his age, he informed MTC EEO officers and CGSI's

---

[5] CGSI contends that this allegation—that CGSI and MTC operate multiple Job Corps facilities internationally—is incorrect. *See* CGSI's Mem. at 7 n.4. However, CGSI notes that "the Court need not address the issue at this stage of the proceedings." *Id.* Indeed, it would be impermissible for the Court to consider such rebuttal facts at this stage. *See Hurd v. District of Columbia*, 864 F.3d 671, 687 (D.C. Cir. 2017) ("a movant may not, consistent with the Federal Rules of Civil Procedure, support a 12(b)(6) motion by pointing to the content of evidence in other cases to rebut facts adequately stated in an opposing party's pleading.")

human resource director. *Id.* ¶ 12. While CGSI recounts Mr. Golden's Second Amended Complaint as alleging that MTC fired him, *see* CGSI's Mem. at 5, Mr. Golden merely states that he "was terminated by Job Corps." 2d Am. Compl. ¶ 16.

Courts in this District have been hesitant to dismiss claims against entities plaintiffs claim are dual employers unless it is clear from the pleadings that the entity definitively did not employ the plaintiff. *See, e.g.*, *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964) ("Whether [the putative employer] possessed sufficient indicia of control to be an 'employer' is essentially a factual issue."); *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 79 (D.D.C. 2009) ("Determining whether [the defendants] were [the] plaintiff's joint employers . . . . [is] a factual issue [that] is plainly inappropriate to resolve on a motion to dismiss pursuant to Rule 12(b)(6)."); *Coles v. Harvey*, 471 F. Supp. 2d 46, 51 (D.D.C. 2007) (finding that the plaintiff "sufficiently pled that she was a joint employee" of two employers and the "[d]efendant's factual assertions do not establish the contrary as a matter of law"). Indeed, CGSI points to *Miles v. Howard University*, 83 F. Supp. 3d 105, 115 (D.D.C. 2015), to support its contention that mere oversight is insufficient to establish joint employer status, but ignores the fact that when evaluating Howard University's motion to dismiss, the court found that "the plaintiff's allegations ha[d] established that Howard retained at least some control over the terms and conditions of her employment, and the Court [wa]s not convinced by Howard's statements to the contrary that the amount of control that Howard retained for itself was insufficient as a matter of law to overcome the plaintiff's allegations." No. 12-378, 2013 WL 5817657, at *10 (D.D.C. Oct. 30, 2013). In *Miles*, the plaintiff alleged that Howard had the authority to veto the appointment of employees to her position and only had the power to terminate her employment indirectly, "through its ability to terminate [her other employer, a subcontractor's,] funding." *Id.* at *9. "The

complaint ma[de] no reference to Howard's control of the plaintiff's salary, benefits, or methods of payment, or to the maintenance of any employment records concerning the plaintiff." *Id.* However, the court still found that "[t]aking the plaintiff's nonconclusory allegations as true, as the Court must do at this stage of the case, . . . the Court cannot determine with certainty that Howard and UDC were not joint employers of the plaintiff." *Id.* at *10 (citing *Iqbal*, 556 U.S. at 678–79).

The Court finds the same factual ambiguity here and therefore cannot grant CGSI's motion to dismiss on this basis. While Mr. Golden alleges that it was MTC that hired him and subjected him to its own employee handbook, he has alleged that he was "supervised on all aspects of his job by MTC and CGSI management personnel." 2d Am. Compl. ¶ 8. Additionally, he explains how CGSI supervised a portion of his job: by approving or rejecting the purchase of supplies for the Job Corps site. *Id.* ¶ 10. Lastly, he alleges that "Job Corps," meaning both MTC and CGSI, terminated his employment. *See id.* ¶¶ 7, 16.[6] While it is still possible that following discovery, Mr. Golden will not have collected enough evidence to demonstrate that CGSI was also his employer under either the *Spirides* or *Browning-Ferris* tests, the Court will give Mr. Golden the opportunity to prove the allegations in his complaint. If Mr. Golden can demonstrate both that CGSI and MTC jointly employed him and that he was subjected to a retaliatory termination, even if it was MTC employees, rather than CGSI employees, who committed the retaliatory action, CGSI may still be held liable. *See Brown v. Corr. Corp. of Am.*, 603 F. Supp.

---

[6] Of course, it should be noted that in his First Amended Complaint, Mr. Golden alleged that it was MTC, not "Job Corps," that terminated his employment. 1st Am. Compl. ¶ 14. However, as explained above, adding an additional entity that terminated his employment (Job Corps, which Mr. Golden defines as a combination of MTC and CGSI) does not directly contradict the allegation in his First Amended Complaint that it was MTC that fired him. As such, the Court will accept this factual allegation as true for the purpose of this motion.

2d 73, 79 (D.D.C. 2009) ("Title VII prohibits employers from discriminating on the basis of sex, 42 U.S.C. § 2000e–2; hence, if the District employed plaintiff then it may be liable for the harms she allegedly suffered.")

## 2. Timeliness of the Age Discrimination Claim

CGSI has raised a different statute of limitations concern than MTC. CGSI argues that Mr. Golden's claim for age discrimination is untimely because his claim of discriminatory firing as opposed to retaliatory firing "seeks to hold Defendants liable for conduct that is fundamentally different than the conduct identified in his original complaint," and therefore that "the Second Amended Complaint does not relate back to the filing of his original complaint," making the discriminatory firing claim untimely. CGSI's Mem. at 10–11. Mr. Golden responds that his age discrimination claim arises from the same conduct, transaction, or occurrence as his retaliation claim and therefore that the age discrimination claim in his Second Amended Complaint relates back to his original complaint, which only contained a claim for retaliation. *See* Pl.'s Opp'n CGSI's Mem. at 11. The Court finds that because the two claims are not sufficiently similar, Mr. Golden's age discrimination claim does not relate back to his original complaint and was therefore untimely filed.

The ADEA requires that a plaintiff file a claim of age discrimination or retaliation within 90 days of receiving a right-to-sue letter from the EEOC. *See* 29 U.S.C. § 626(e). Federal Rule of Civil Procedure 15(c) permits an amendment to a complaint to relate back to the date of an original pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amended complaint, however, does not relate back when it "asserts a new ground for relief supported by facts that differ in both time and type from those the original

pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). The D.C. Circuit has explained

that "[t]he underlying question is whether the original complaint adequately notified the

defendants of the basis for liability the plaintiffs would later advance in the amended complaint."

*Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008). The D.C. Circuit has also

explained that "an amendment that 'attempts to introduce a new legal theory based on facts

different from those underlying the timely claims' does not relate back." *Jones v. Bernacke*, 557

F.3d 670, 674 (D.C. Cir. 2009) (quoting *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir.

2002)). "Indeed, even an amendment that shares 'some elements and some facts in common'

with the original claim does not relate back if its effect is 'to fault [the defendants] for conduct

different from that identified in the original complaint.'" *Id.* (quoting *Meijer, Inc.*, 533 F.3d at

866.

Mr. Golden likely received his right-to-sue letter stemming from his second EEOC

charge at the end of May 2016. *See Golden*, 266 F. Supp. 3d at 282. He then filed his original

complaint with this Court alleging retaliation in violation of Title VII on August 16, 2016, and

amended his complaint to change his cause of action to retaliation in violation of the ADEA on

November 3, 2016. *Id.* The Court found that the ADEA retaliation claim in his First Amended

Complaint related back to the Title VII claim in his original complaint, in part because the new

complaint did not include any additional facts. *Id.* at 283.

Mr. Golden's Second Amended Complaint contains both new facts and a new cause of

action. *Compare* 2d Am. Compl *with* 1st Am. Compl. Mr. Golden now alleges that not only was

he fired because he complained about disparate pay and treatment based on his age, but also that

he was fired because of his age. *Id.* ¶¶ 20–23, 31–34. While his allegedly discriminatory

termination certainly occurred at the same "time" as his allegedly retaliatory termination, *see*

*Mayle v. Felix*, 545 U.S. 644, 650 (2005), the harm he suffered is not of the same "type." *Cf. Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 264, 279 (D.D.C. 2011) (In the administrative exhaustion context, "[d]iscrimination and retaliation claims are considered distinct types of claims that must be raised independently . . . ."). While in *Dave v. District of Columbia*, the court allowed a plaintiff to add a § 1981 claim to a complaint that already contained claims for discrimination and retaliation in violation of Title VII because the plaintiff's new complaint stated no new factual allegations, 811 F. Supp. 2d 111, 116–117 (D.D.C. 2011), here Mr. Golden included a new set of factual allegations to support his new age discrimination claim. While CGSI was certainly already aware that Mr. Golden believed he was discriminated against based on his age, both from his internal EEO complaints and his two EEOC charges, his first two judicial complaints were devoid of this accusation and many of the facts he is now using to support it. In this Circuit, "[t]he underlying question is whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint." *Meijer, Inc.*, 533 F.3d at 866; *see also Santamarina v. Sears, Roebuck Co.*, 466 F.3d 570, 573 (7th Cir. 2006) ("The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one."). Because Mr. Golden's original complaint gave CGSI no notice that he planned to assert a claim that he had been fired because of his age, his age discrimination claim does not relate back to the date he filed this suit.[7] As a result, Mr. Golden's age discrimination claim must be dismissed as untimely filed.

---

[7] Mr. Golden's first two judicial complaints also lacked age discrimination claims against MTC. Therefore, Mr. Golden's instant age discrimination claim against MTC was not timely filed either. However, MTC did not raise CGSI's successful argument in its motion to dismiss,

### 3. Wrongful Discharge and Retaliation

CGSI also challenges Mr. Golden's claims for retaliation and wrongful termination. As to his retaliation claim, CGSI argues that because Mr. Golden "concedes that he was terminated 'for failure to meet the requirements of the PIP' and that is not protected activity," he has failed to state a claim for retaliation. CGSI's Mem. at 8 (quoting 2d Am. Compl. ¶ 22). And just like MTC, it argues that Mr. Golden has failed to state a claim of wrongful discharge because he was an at-will employee and he has not alleged that he was terminated in violation of any recognized public policy, as required to state a common law claim of wrongful discharge. *Id.* at 11–13. Mr. Golden responds that he has alleged sufficient facts to state a claim for retaliation, focusing mainly on the fact that he alleged sufficient facts to demonstrate that he suffered an adverse employment action (his termination) and that CGSI was his employer, but not addressing CGSI's arguments regarding his wrongful discharge claim. *See* Pl.'s Opp'n CGSI's Mot. at 5–11. CGSI in turn argues that because Mr. Golden did not directly address its arguments regarding the reason for his termination, and did not address its arguments regarding his wrongful discharge claim at all, he has conceded CGSI's motion to dismiss. *See* CGSI's Reply at 6–7, ECF No. 50. However, the Court finds, just as it did above with regard to MTC, that Mr. Golden has succeeded in stating a claim for retaliation and has failed to state a claim for wrongful termination.

---

and the Court is not required to dismiss a claim *sua sponte* on a non-jurisdictional ground not raised in a motion to dismiss. *See Day v. McDonough*, 547 U.S. 198, 205 (2006) ("A statute of limitations defense . . . is not 'jurisdictional,' hence courts are under no *obligation* to raise the time bar *sua sponte*.") The Court will not confer on MTC the benefits of an argument it did not itself raise. Therefore, the Court does not dismiss Mr. Golden's age discrimination claim against MTC as it does his age discrimination claim against CGSI.

As mentioned above, the D.C. Circuit has recently clarified that "a party may rest on its complaint in the face of a motion to dismiss if the complaint itself adequately states a plausible claim for relief" and that a court should not turn "what should be an attack on the legal sufficiency of the complaint into an attack on the legal sufficiency of the response in opposition to the motion to dismiss." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 345 (D.C. Cir. 2018). Here, Mr. Golden has "adhered to [his] position that [his] complaint was well-pleaded," *id.*, with regard to his retaliation claim, but does not address his wrongful discharge claim at all. *See* Pl.'s Opp'n CGSI's Mot. at 5–11.

In analyzing Mr. Golden's claims for wrongful discharge and retaliation against CGSI, the Court looks to the same factual allegations Mr. Golden made regarding MTC. As explained above, the facts alleged in Mr. Golden's complaint do not state that he was anything other than an at-will employee and point to no public policy Mr. Golden was furthering when he was terminated. *See supra* Section IV.A.4. As such, Mr. Golden has failed to state a claim for wrongful termination against CGSI, just as he did against MTC, and that claim must be dismissed.

As to Mr. Golden's claim for retaliation, the Court has already found that Mr. Golden has alleged that he engaged in protected activity and that the temporal proximity of his protected activity and his termination allow for an inference at this stage in the proceedings that he was retaliated against. *See supra* Section IV.A.2. Because Mr. Golden has also sufficiently alleged that CGSI was his employer while he worked at Job Corps, *see supra* Section IV.B.1, his retaliation claim against CGSI survives.[8]

---

[8] CGSI did not raise, as MTC did, the argument that claims based on discriminatory or retaliatory acts occurring before April 24, 2015, 300 days before the filing of Mr. Golden's second EEOC charge, are time-barred. *See* CGSI's Mem. at 10–11 (CGSI's only statute of

## V. CONCLUSION

For the foregoing reasons, Defendant MTC's Motion to Dismiss (ECF No. 45) is

**GRANTED IN PART AND DENIED IN PART;** and Defendant CGSI's Motion to Dismiss

(ECF No. 46) is **GRANTED IN PART AND DENIED IN PART**. The Court dismisses Mr.

Golden's claims for wrongful termination against MTC and CGSI, as well as his claim for age

discrimination against CGSI. The Court further dismisses Mr. Golden's claims against MTC for

age discrimination and retaliation based on actions MTC took before April 24, 2015. An order

consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: August 6, 2018                                               RUDOLPH CONTRERAS
                                                                     United States District Judge

---

limitations argument). Just as with MTC's failure to raise the untimeliness of Mr. Golden's age
discrimination claim, the Court will not confer on CGSI the benefits of an argument it did not
itself raise. Therefore, the Court does not dismiss Mr. Golden's retaliation claims against CGSI
based on acts occurring before April 24, 2015. However, the Court takes no position on what
impact, if any, the fact that Mr. Golden pursues joint liability against MTC and CGSI as joint
employers has on the incongruous statute of limitations periods to which the defendants are now
subject.