UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| DAVID GOLDEN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-1660 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 62, 63, 68 |
| | : | | |
| MANAGEMENT & TRAINING CORPORATION, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

DENYING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT, DENYING MTC'S REQUEST FOR FEES, AND GRANTING MTC'S MOTION TO EXTEND DISCOVERY PERIOD

### I. INTRODUCTION

This matter comes before the Court upon David Golden's motion to enforce a settlement agreement upon Management & Training Corporation ("MTC"). After considering the parties' submissions and the governing law, the Court concludes the following: Mr. Golden's motion to enforce the settlement agreement shall be denied because no valid, enforceable settlement agreement was formed between Mr. Golden and MTC. At the time Mr. Golden alleges that the settlement agreement was formed, the parties had not reached the requisite meeting of the minds over a material term: the scope of the settlement agreement. The Court also grants MTC's motion to extend the discovery period and requests that the parties meet and submit a proposed discovery schedule within 30 days.

### II. FACTUAL BACKGROUND

On September 24, 2018, Mr. Golden's counsel, Mr. Crump, initiated settlement negotiations with a global settlement offer that "attempt[ed] to settle the referenced matter with

Management Training Corporation (MTC) *and* Chugach Government Solutions (CGSI)" for $128,000. Defs.' Opp'n Mot. to Enforce Settlement Agreement ("Defs.' Opp'n") Ex. 1, ECF No. 68-1 (emphasis added). MTC responded on November 30 with a global counteroffer, "MTC offers [$]10[,000] to settle the case as to all defendants." Defs.' Opp'n Ex. 3, ECF No. 68-3. On December 19, MTC made another counteroffer, again specifying its global nature. *See* Defs.' Opp'n Ex. 4, ECF No. 68-4 ("We counter with [$]15[,000] to settle all claims as to all defendants.").

Between February 8 and 12 of 2019, Mr. Crump and MTC exchanged emails trying to reach an exact settlement amount. MTC inquired if Mr. Crump could settle for $25,000, and Mr. Crump answered asking if MTC's counsel "could get [MTC] to [$]35[,000]." Defs.' Opp'n Ex. 6, ECF No. 68-6. MTC stated that it was "a real push to get to [$]25[,000]," but that it might be possible to get to $30,000 if that would settle the matter. Defs.' Opp'n Ex. 7, ECF No. 68-7. At no point in this round of negotiations did either party make any explicit statement that the settlement was to be with respect to both Defendants, or that these proposals were to deviate from the previously explicit global settlement.

On February 19, Mr. Crump replied, "My client has now authorized me to settle his claim with *respect to MTC* for . . . [$]30[,000]." Pl.'s Mot. Enforce Settlement Agreement ("Pl.'s Mot.") Ex. 2, ECF No. 63-2 (emphasis added). MTC accepted the counteroffer and arranged to prepare a settlement agreement for Mr. Crump's review. Pl.'s Mot. Ex. 3, ECF No. 63-3 ("Great, thanks for letting me know. Will prepare an agreement and send to you for review."). On March 5 at 11:32 am, MTC sent Mr. Crump a complete settlement agreement that read in relevant part, "[t]his . . . settlement agreement . . . is made and entered into by and between David Golden . . . and Management Training Corporation *and* Chugach Government Services,

Inc., on their own behalves, and on behalf of their successors, predecessors and assigns." Defs.' Opp'n Ex. 10, ECF No. 68-10 (emphasis added).

Mr. Crump responded to MTC at 12:58 pm, asking why MTC had included Chugach in the settlement agreement. Defs.' Opp'n Ex. 11, ECF No. 68-11. Mr. Crump asserted that the negotiations had only been between Mr. Golden and MTC, and that the settlement was not with respect to all parties. Defs.' Opp'n Ex. 11, ECF No. 68-11. Further, Mr. Crump stated that Chugach's counsel had informed him that Chugach would not be settling the case. *Id.* MTC replied at 1:13 pm and asserted that since the beginning of the settlement negotiations, the parties had been discussing a global settlement. Defs.' Opp'n Ex. 12, ECF No. 68-12. During that exchange, MTC "made [it] clear" that "there will be no settlement if all defendants are not included." *Id.*

At 1:30 pm, Mr. Crump reasserted that MTC had "made absolutely no mention of a global settlement agreement" and that MTC's "emails to [Mr. Crump did] not even mention a global settlement." Defs.' Opp'n Ex. 13, ECF No. 68-13. In addition to these claims, Mr. Crump stated that any allegation made by MTC that Mr. Crump was "walking back anything is misplaced and not in good faith." *Id.*

At 2:31 pm, MTC replied, "Please see your 9/24/18 initial demand, which explicitly propose[d] a global settlement."[1] Defs.' Opp'n Ex. 14, ECF No. 68-14. MTC continued, "We then countered globally, as reflected in [the] email counters to you of 11/30 and 12/19, each of which makes clear that the counters [MTC] were making were to settle the case as to all defendants." *Id.* Mr. Crump replied two minutes later that he would "get back to [MTC]." *Id.*

---

[1] Mr. Crump's initial settlement agreement read in relevant part: "Please accept the following letter of demand in support of my client – David Golden's attempt to settle the referenced matter with Management Training Corporation (MTC) and Chugach Government Solutions (CGSI)." *See* Defs.' Opp'n Ex. 1, ECF No. 68-1.

3

Chugach responded to Mr. Crump's email two days later at 10:14 am on March 7, expressing "surprise" at the position Mr. Crump was taking. Defs.' Opp'n Ex. 16, ECF No. 68-16. Chugach stated that in the previous conversation between Chugach and Mr. Crump, Mr. Crump had asked "whether Chugach would contribute more than what [MTC] had already put on the table for both defendants." *Id.*

Mr. Crump replied to Chugach at 10:33 am, stating that Chugach was "correct in [its] assertion." Defs.' Opp'n Ex. 17, ECF No. 68-17. Mr. Crump went on to say:

> When we last spoke, I did ask you whether Chugach would be willing to put an additional amount on the table in excess of what MTC was contributing in an effort to settle this matter. However, when I spoke with [MTC], *my interpretation* of our conversation was that [MTC] could not speak as to what Chugach was going to do with respect to the settlement or moving forward to litigate the case. *This is where the confusion came*. It was *my understanding* that MTC would settle the matter while Chugach would go forward. While my initial demand was global, because [Chugach] was never included in any conversations regarding settlement until we spoke in late February, *I believed* the settlement offered by [MTC] was as to MTC only. *If I am wrong – that is my bad*.

*Id.* (emphasis added).

Between April 4 and 5, Mr. Crump and MTC reengaged in explicitly global settlement negotiations. Defs.' Opp'n Ex. 19, ECF No. 68-19 ("After speaking with my client, [Mr. Golden] has decided to return to his original demand of [$]100[,000] to settle this matter globally."). And on April 24, both MTC and Chugach alerted Mr. Crump that they would not seek to enforce the settlement agreement. Defs.' Opp'n Ex. 20, ECF No. 68-20. On April 29, Mr. Crump filed the instant motion to enforce the settlement agreement with MTC. *See* Pl.'s Mot. at 6.

### III. LEGAL STANDARD

"It is well established that federal district courts have the authority to enforce settlement agreements entered into by the litigants in cases pending before them." *Demissie v. Starbucks*

4

*Corp. Office & Headquarters*, 118 F. Supp. 3d 29, 34 (D.D.C. 2015) (quoting *Ulliman Schutte Constr., LLC v. Emerson Process Mgmt. Power & Water Sols.*, No. 02–1987, 2007 WL 1794105, at *3 (D.D.C. June 19, 2007)). The moving party bears the burden of proving by clear and convincing evidence that the parties reached a binding agreement. *See Samra v. Shaheen Bus. & Inv. Grp., Inc.*, 355 F. Supp. 2d 483, 493 (D.D.C. 2005). The clear and convincing evidence standard requires a showing sufficient to allow the court to "reach a firm conviction of the truth on the evidence about which [it] is certain." *Id.* at 494 (alteration in original) (quoting *United States v. Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994)).

Contract law governs settlement agreements, and the Court applies local law in determining whether a settlement agreement was formed. *T St. Dev., LLC, v. Dereje & Dereje*, 586 F.3d 6, 12 (D.C. Cir. 2009). For a contract to be enforceable under D.C. law, the court must find that there was "(1) an agreement to all material terms, and (2) [that the] intention of the parties [was] to be bound." *Duffy v. Duffy*, 881 A.2d 630, 634 (D.C. 2005) (quotation omitted). In order to find an agreement between the parties, "[t]here must thus be an honest and fair 'meeting of the minds' as to all issues in [the] contract," *Simon v. Circle Assocs., Inc.*, 753 A.2d 1006, 1012 (D.C. 2000) (citation omitted), and if there is no meeting of the minds as to all material terms, then "there can be no enforceable contract." *Bailey v. Fed. Nat'l Mortg. Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000); *see also Queen v. Schultz*, 747 F.3d 879, 884–85 (D.C. Cir. 2014).

Proof of a meeting of the minds can be found in "the parties' actions at the time of contract formation," *Ekedahl v. COREStaff, Inc.*, 183 F.3d 855, 858 (D.C. Cir. 1999), and when it is ambiguous whether the parties did reach this meeting of the minds, the "intent and understanding of the parties is of critical importance." *Am. Prop. Constr. Co. v. Sprenger Lang*

*Found.*, 768 F. Supp. 2d 198, 202–03 (D.D.C. 2011) (citing *Howard Univ. v. Lacy*, 828 A.2d 733, 737 (D.C. 2003)). Indeed, this analysis of the parties' intent and understanding requires a "probing inquiry into the understanding of each party to the alleged contract." *Lacy*, 828 A.2d at 737. "To assess whether there was such a 'meeting of the minds,' [the court] consider[s] whether the parties' objective acts manifested agreement as to each material [term] of the settlement agreement." *Brooks v. Rosebar*, 210 A.3d 747, 751 (D.C. 2019) (citing *Hood v. District of Columbia*, 211 F. Supp. 2d 176, 180 (D.D.C. 2002)). If the parties to a purported settlement agreement have "failed to agree on . . . an essential term" of the agreement, then that failure may show that the parties did not mutually assent to the creation of a settlement. *Id.* (quoting *Malone v. Saxony Coop. Apartments, Inc.*, 763 A.2d 725, 729 (D.C. 2000)).

## IV. ANALYSIS

### A.

The outcome of this case rests on whether Mr. Golden and MTC entered into a valid, enforceable settlement agreement. Applying local law, the Court looks to the contract law of the District of Columbia. *T St. Dev.*, 586 F.3d at 12. If there is no meeting of the minds among the parties over the material terms of the purported settlement agreement, then there is no agreement to enforce. *Brooks*, 210 A.3d at 752.

Here, the parties' communication shows that there was no meeting of the minds between the parties regarding a material term of the purported settlement agreement: whether the settlement of Mr. Golden's claim would be with respect to only MTC or with respect to both MTC and Chugach. This dispute is evidenced in the email communications between the parties. The emails not only record the purported settlement agreement, but also provide important context for the entire settlement discussion.

The initial communication that started the settlement negotiations was a global offer from Mr. Golden to settle the case with respect to both MTC and Chugach. *See* Defs.' Opp'n Ex. 1. And both of MTC's subsequent counteroffers mirrored Mr. Golden's global language. Defs.' Opp'n Ex. 3–4. The following round of settlement negotiation emails between Mr. Crump and MTC did not include evidence of the scope of the agreement. *See* Defs.' Opp'n Ex. 6. While these settlement discussions were not explicitly global in nature, they also did not indicate or otherwise note that the discussions were now limited in scope to MTC only.

Mr. Crump then sent a final counteroffer that was explicitly "with respect to MTC." Defs.' Opp'n Ex. 9. MTC mistakenly overlooked that language in the email, accepted the offer, and drafted a settlement agreement. *See* Defs.' Opp'n at 14, ECF No. 68. However, the draft settlement agreement that MTC sent Mr. Crump was global in nature, reading "[t]his confidential settlement agreement . . . is made and entered into by and between David Golden . . . and Management Training Corporation *and* Chugach Government Services." *See* Defs.' Opp'n Ex. 10 (emphasis added). The Court looks to MTC's proposed settlement agreement as an objective act that evidences MTC's intent as to the scope of the settlement. *Brooks*, 210 A.3d at 751. Based on the language that MTC drafted in response to Mr. Crump's counteroffer, "between [Mr. Golden] . . . and [MTC] *and* Chugach," MTC intended for the settlement to be with respect to both defendants. Defs.' Opp'n Ex. 10. Because MTC's proposed agreement was global in nature, and Mr. Crump's counteroffer was for a settlement only with respect to MTC, there was no manifested agreement between the parties as to the material term of the scope of the settlement at the time that Mr. Golden alleges that the enforceable settlement agreement was created.

7

Additionally, the March 7, 2019 email from Mr. Crump to Chugach weighs against a finding that Mr. Golden has shown by clear and convincing evidence that the parties came to a meeting of the minds. *See* Defs.' Opp'n Ex. 17. In the email, Mr. Crump recognized that there was confusion between the parties as to the scope of the settlement, and that his "interpretation" of the prior conversations is "where the confusion came" from. *Id*. Mr. Crump "believed" that the majority of the discussions had addressed a settlement with only MTC, and he concedes that "[i]f [he] is wrong – that is [his] bad." *Id*. If the understanding of one party is fundamentally at odds with the understanding of another, it cannot be said that the parties reached a meeting of the minds. *Bailey*, 209 F.3d at 746. Thus, these statements further support the conclusion that there was never a meeting of the minds between the parties with respect to the scope of the settlement agreement. Further, Mr. Crump's admitted confusion sheds doubt on the Court's ability to use this evidence to "reach a firm conviction of the truth . . . about which [it] is certain." *Samra*, 355 F. Supp. 2d at 494. When the parties to the agreement themselves are not certain as to what was negotiated and agreed upon, the Court cannot find that the burden of proving the meeting of the minds by clear and convincing evidence was met.

On the record before the Court, Mr. Golden, as the moving party, has failed to show by clear and convincing evidence that there was a meeting of the minds between himself and MTC as to the scope of the settlement agreement. Because there was no meeting of the minds as to all material terms, no valid, enforceable settlement agreement was created between Mr. Golden and MTC.

B.

At the March 28, 2019 status conference, the Court indicated that it was inclined to allow additional time for discovery if a motion to enforce the settlement agreement was not filed or

8

granted. After denying Mr. Golden's motion to enforce the settlement agreement, the Court deems it appropriate to grant MTC's motion to extend the discovery period. The Court requests that the parties meet and confer between themselves before submitting a proposed discovery schedule to the Court within 30 days.

## V. Conclusion

For the foregoing reasons, Mr. Golden's motion to enforce the settlement agreement (ECF No. 63) is **DENIED**[2] and MTC's motion to extend the discovery period (ECF No. 62) is **GRANTED**. It is further **ORDERED** that the parties meet and submit a proposed discovery schedule within 30 days. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 15, 2019                                                RUDOLPH CONTRERAS
                                                                                              United States District Judge

---

[2] Additionally, MTC's request for fees (ECF No. 68) fails to establish that Mr. Golden did not act in good faith and is therefore **DENIED**.